GEO. W. EARLE, PLAINTIFF IN ERROR, v. B. BURCH
AND OTHERS, DEFENDANTS IN ERROR.

1. **Chattel Mortgage:** RIGHTS OF PURCHASER. Where the law declares a mortgage valid, as between the parties, but void as to creditors and subsequent purchasers in good faith, a creditor, in order to avail himself of the advantage of that character, must remain a creditor throughout the litigation. If he receive his pay in the mortgaged property, with knowledge of the mortgage, he will take it subject to the mortgage.

2. ——— : ———. In such case, no one who has knowledge of such sale can become a subsequent purchaser of the property which is the subject thereof, in good faith, so as to avail himself of the advantage awarded to that class of purchasers.

3. **Parties in Action of Replevin.** The statutory rule that " all persons having an interest in the subject of the action, and in obtaining the relief demanded, may be joined as plaintiffs," etc., (code, § 40) is applicable, not only to actions formerly denominated equitable, but also to those formerly denominated legal, including actions of replevin.

4. **Replevin:** FINDING OF COURT. The defendants claiming only a special property in the goods replevied, and the court having found the value of said special property, which finding was within the value of the goods as proved at the trial ; *Held,* Not necessary that the court should have found the general value of the property.

ERROR to the district court for Gage county. Tried below before BROADY, J.

*A. H. Babcock* and *T. D. Cobbey,* for plaintiff in error.

*Burke & Prout* and *Griggs & Rinaker,* for defendants in error.

COBB, J.

This was an action of replevin in the district court of Gage county. George W. Earle was plaintiff, and one George

Earle v. Burch.

Noll, a constable, was defendant; the property replevied, a stock of drugs, medicines, and fancy articles, such as are usually kept in a drug store. There are two lengthy abstracts in the case in this court; but I will state the facts of the case, as I understand them, after a careful examination of both, and frequent recurrences to the transcript, without specially following either.

One Dr. George W. Rightmire, of Wymore, was, as early as October 6, 1882, the owner and keeper of the drug store and stock of goods in question, on which day he executed the chattel mortgage thereof to B. Burch & Co., hereinafter referred to. On the 12th day of December, 1883, he executed the chattel mortgage of said stock of goods to Holland Norton, also hereinafter referred to. On the 14th day of January, 1884, he sold and delivered the said stock of goods to George W. Earle. Earle paid for the said goods by delivering to Rightmire certain overdue notes of the said Rightmire, amounting to about $4,000, which he held, and assuming an indebtedness of the said Rightmire, at his request, amounting to four or five hundred dollars. On the 25th day of February, 1884, Max Meyer & Co., having obtained a judgment against the said George W. Rightmire, and suing out an execution thereon, placed the same in the hands of Drew Ryan, constable, and caused him to levy upon and seize the said stock of goods to satisfy the same. On the 26th day of February, 1884, B. Burch & Co. and Holland Norton commenced a joint action of replevin against the said Drew Ryan, and replevied the said stock of goods from him, which said order of replevin was placed in the hands of George Noll, constable, for service, and by him served by seizing said goods, causing the same to be appraised, and upon the execution of a replevin bond by the plaintiff in said action, with security, he delivered the said goods to the said B. Burch & Co. and Holland Norton.

On the 13th day of March, 1884, this action was com-

menced.   The plaintiff (as is stated in the briefs of counsel on either side), supposing that said goods were still in the possession of said George Noll, the said action of replevin was brought against him, as defendant.   The goods replevied, however, in said last mentioned action were, as appears from the statement of counsel in the brief, delivered to the said Earle, plaintiff, upon the giving of the usual replevin bond.

Upon the application of B. Burch & Co., and Holland Norton, and Max Meyer & Co., they were severally permitted by the court to be made defendants in the action, and severally filed their answers, consisting of general denials, and on the part of said Max Meyer & Co. setting up the obtaining of judgment by them against the said George W. Rightmire, and the levy of an execution issued upon said judgment upon said goods, and that, at the date of said levy, the same were the property of, and in the possession of, said Rightmire.   To which answer the plaintiff replied, denying each and every allegation thereof.

Upon the affidavit and motion of counsel the said Max Meyer & Co. applied to the court for an order merging the said action of B. Burch & Co. and Holland Norton against Drew Ryan, and making it a part of this action.   While I find no order of the court upon said motion in the record, one was evidently regarded as made, allowing the motion.

The cause was tried to the court, a jury being waived. . I quote the findings and judgment of the court:   "This cause coming on to be heard, and having heretofore been submitted on the pleadings and the evidence, on consideration whereof the court finds that at the commencement of the original constituent action of *George W. Earle v. George Noll*, constable, the defendants, B. Burch & Co. and Holland Norton, were entitled to the possession of the goods replevied by virtue of a special property to the amount of $430.08 to B. Burch & Co., and the amount of $1,252.89 to Holland Norton, and that the property replevied was

the property of plaintiff, subject to said aggregate lien of $1,682.97 in favor of B. Burch & Co. and Holland Norton, and that as between the parties to the other constituent action of *Holland Norton and B. Burch & Co. v. Max Meyer & Co.* (Drew Ryan), Max Meyer & Co. were entitled to the possession by virtue of a judgment lien to the amount of $221$\frac{38}{100}$; that by consent of Holland Norton and B. Burch & Co., Max Meyer & Co. are entitled to said $221$\frac{38}{100}$ out of the first money paid on the above findings in favor of Holland Norton and B. Burch & Co.; that the said right of possession of B. Burch & Co. and Holland Norton is of the value of said aggregate sum $1,682$\frac{97}{100}$, and I find their damages for detention one cent. (After overruling the plaintiff's motion for a new trial.) It is therefore considered, ordered, adjudged, and decreed by the court that the defendants, B. Burch & Co. and Holland Norton, have a return of the property, or in case a return of said property can not be had, that the defendants, B. Burch & Co. and Holland Norton, recover of said plaintiff the said value, to-wit, the sum of one thousand six hundred and eighty two and $\frac{97}{100}$ dollars, and one cent damages for withholding the same, and costs of suit."

The cause is brought to this court by the plaintiff, on error. He assigns the following errors, which are substantially the same as those assigned in his motion for a new trial:

" 1. The court erred in finding that the defendants, B. Burch & Co. and Holland Norton, were entitled to the possession of the goods replevied at the commencement of this action by reason of a special property amounting in the aggregate to the sum of $1,682$\frac{97}{100}$ or any other amount.

" 2. The court erred in finding that the defendants, Max Meyer & Co., were entitled to the possession of said goods at the commencement of this action by virtue of a judgment lien to the amount of $221$\frac{38}{100}$, or any other amount.

" 3. The court erred in finding the right of possession of

45

said goods jointly in the defendants, B. Burch & Co. and Holland Norton, and finding their damages for detention, instead of separately finding the damages each had sustained.

"4. The court erred in admitting any evidence in support of the action of replevin of the stock of goods by B. Burch & Co. and Holland Norton, on the ground that their petition and affidavit in replevin showed on their face that they had no cause of action.

" 5. The court erred in not finding the value of the property in controversy.

" 6. The court erred in rejecting evidence offered by plaintiff on the objection of the defendants.

" 7. The court erred in admitting evidence offered by defendants over the objection of plaintiff.

", 8. The court erred in admitting in evidence the chattel mortgage of George W. Rightmire to Holland Norton and to B. Burch & Co. over the objections of plaintiff.

" 9. The findings of the court in favor of the defendants are against the weight of the evidence and are not sustained by sufficient evidence.

" 10. The findings of the court in favor of the defendants are contrary to law.

" 11. The findings are irregular and do not pass upon the issue involved in the action, and are not such findings as the law requires in an action of replevin, and no valid judgment can be rendered thereon."

I will examine as many of the assignments as may be deemed necessary to a proper disposition of the case, but will not take them up in their order.

A good portion of the abstract, as presented by either party, is devoted to the evidence for and against the sale by Rightmire to Earle, and its *bona fides,* without reference to its *bona fide* character, as regards the mortgages to B. Burch & Co. and Holland Norton. But the court having found in favor of Earle's title to the goods as against the

general creditors of Rightmire, such evidence is immaterial to the questions before this court, and it will not be examined or considered, except in so far, if at all, as it may tend to throw light upon the question of his right to attack the said mortgages.

The mortgage from Rightmire to Holland Norton contains a clause of which the following is a copy:

"*Provided*, That the said George Rightmire shall have the right to sell and dispose of said property in the usual course of trade, and shall replenish said stock from time to time, as shall be required by the sale of said goods in the usual course of trade, and it is understood by and between the parties that all such goods as are purchased for the purpose of replenishing said stock shall be subject to, and be covered, by this mortgage, as though especially enumerated therein."

The mortgage from Rightmire to B. Burch & Co. was executed October 6th, 1882, nearly fifteen months before the sale of the goods by Rightmire to Earle. The firm of B. Burch & Co., so far as can be ascertained from the record, consisted of B. Burch, I. C. Burch, and M. H. Southwick. These parties were all sworn as witnesses at the trial, and each testified to the effect that they were frequently in the store of George W. Rightmire between the time of the execution and delivery of the said mortgage and the sale from Rightmire to Earle, and saw him selling and disposing of the mortgaged goods at retail, and that neither of them ever made any objections to his so doing.

I assume it to be the law that at the date of the sale from Rightmire to Earle these mortgages were good as between the parties thereto, respectively; but void as to the creditors of Rightmire and (subsequent) purchasers from him in good faith.

There was evidence tending to prove, and which I will assume does prove, that at the time of the sale from Rightmire to Earle the latter knew of the existence of the said

mortgages.    Indeed there is evidence to the effect that about the time of his purchase of the goods, Earle made a statement to one or more of the members of the firm of B. Burch & Co. that he was aware of their mortgage, and of the consideration for which it was given, and expressed the hope that it would soon be paid off.    Under this state of facts, was he a purchaser in good faith?    The words "in good faith," or their Latin equivalent, *bona fides,* have been often construed and their meaning defined when used as applicable to cases where the want of legality or the pursuit of strictly legal form consisted in a failure to comply with a recording or registration act, but I find no case, in the course of the examination which I have been able to make, where the want of good faith, or *bona fides,* has been imputed to a party acting with actual knowledge of a deed or mortgage of the character which the law declares fraudulent and void as to persons who stand in the relation toward the other parties which is occupied by him.    And yet, upon principles fairly analogous to those governing many cases, and which must be upheld, it must be a sound rule of law that one cannot become a *bona fide* purchaser of property from another without the intention on his part to discharge all of the legal duties and obligations which such other person has incurred, in respect to such property, which is known to the purchaser at or before the time of the purchase.    Now we have already seen that these mortgages were void as between the mortgagees and the creditors of the mortgagor, the class to which the plaintiff once belonged, and purchasers from him in good faith ; yet it cannot be denied that as between the parties to such mortgages they were legal and valid.    Such being the case, could a third party with knowledge, by purchase, even paying a full consideration, acquire the rights of the mortgagor in respect to the property freed from the duty of applying it upon the mortgage?    I think not. , To state the proposition a little differently, if Rightmire had not, nor would

have, any creditors, and had all the world notice of these mortgages, then they would be absolutely safe and legal. Of the two favored classes, creditors and purchasers in good faith, the first would be empty, and no one could enter the second without such knowledge, or notice, as would divest him of an essential element of his character—*bona fides*. But he had creditors, and the plaintiff belonged to that class. To him the mortgages were void, notwithstanding his knowledge, good faith, or ignorance not being necessary to his standing in that class. From that vantage ground he could have assailed the mortgages with the weapons of the law, and it may be presumed successfully. But when he descended to the arena of barter, and sought to become a purchaser, then it was necessary that he be clothed with the habiliments of good faith, good intentions, and must not know that by means of such transactions he is depriving a fellow purchaser of a purchase, conditional though it may be, yet as between the parties as honest and equally lawful as any which he may make.

It must be admitted that the plaintiff, neither in the character of creditor or purchaser, is chargeable with notice of the mortgages by reason of their having been recorded. The mortgages being void as to him, while he had no actual knowledge of their existence, the record was impotent to charge him therewith, and upon his acquiring actual knowledge there was no office for that by construction. It is evident that the trial court found as a matter of fact that at or before the purchase by the plaintiff he had actual knowledge of both mortgages, and there being evidence to sustain such finding, it cannot be disturbed.

The principal remaining question is, whether two parties having separate and distinct claims to the possession of the same property may unite such claims, and in their joint or combined names maintain an action of replevin therefor.

The following sections of the code are quoted as governing the consideration of this question:

"Sec. 40.   All persons having an interest in the subject of the action, and in obtaining the relief demanded, may join as plaintiffs, except as otherwise provided in this title;" and

"Sec. 429.   Judgment may be given for or against one or more of several plaintiffs, and for or against one or more of several defendants; it may determine the ultimate rights of the parties on either side, as between themselves, and it may grant to the defendant any affirmative relief to which he may be entitled," etc.

"It shocks the prejudices of common-law pleaders to speak of a union of plaintiffs, where there is not a joint interest; and such is the effect of legal education and long habits of thinking, that what seems so natural in a proceeding to prevent a common injury, or to set aside a sale for the benefit of creditors, or to subject to their respective claims the assets of an estate, seems almost impossible in case a sum of money is sought to be recovered in which sundry persons have a several, and perhaps unequal, interest.   But it has come to be generally conceded that the rule is universal in its application, as it is in its terms; and if two or more are interested in the subject of the action, and in the relief sought, they may unite as plaintiffs for the recovery of money, or of specific real or personal property."   Bliss on Code Pleading, § 74.

The case of *Schiffer, Admr., and others v. The City of Eau Claire*, 51 Wis., 385, was an action against the city for damages for flooding a certain house and grounds owned in severalty by several persons, all of whom joined as plaintiffs.   The supreme court, sustaining the judgment of the circuit court, overruling a demurrer to the petition, say in the syllabus:   "The statutory rule that 'all persons having an interest in the subject of the action, and in obtaining the relief demanded, may be joined as plaintiffs,' etc., is applicable not only to actions formerly denominated equitable, but also those formerly denominated legal, in-

cluding those for the recovery of money only." Citing numerous cases from that and other courts. See also Dicey on Parties,* p. 380.

While it must be admitted that many of the cases cited by the court in the case last above mentioned, as well as by the author from whose work I have quoted, fall considerably short of establishing the construction of the code contended for, yet I believe it to be in the main correct, and that in sustaining the defense in this action wherein the separate and distinct claims of the several defendants, but upon the same property, are united in the one action and judgment, there was no error.

By the 5th assignment, plaintiff in error complains that the court failed to find the value of the property replevied.

Section 191 of the code provides as follows: "In all cases when the property has been delivered to the plaintiff, where the jury shall find upon issue joined, for the defendant, they shall also find whether the defendant had the right of property, or the right of possession only, at the commencement of the suit; and if they find either in his favor, they shall assess such damages as they think right and proper for the defendant; for which, with costs of suit, the court shall render judgment for the defendant."

Section 191*a* provides that, "The judgment in the cases mentioned in sections one hundred and ninety, and one hundred and ninety-one, and in section one thousand and forty-one, of said code, shall be for a return of the property, or the value thereof in case a return cannot be had, or the value of the possession of the same, and for damages for withholding said property and costs of suit."

In the case at bar, the defendants did not claim the value of the property, but of the possession thereof, as measured by their respective mortgages. The value of such possession was found by the court, and while, in order to make such finding, it must have believed the evidence to establish the value of the property itself, at a figure

equal to or above that of his finding of the value of the defendants' possession thereof, the statute does not require that such belief be expressed in the finding. If the finding of the court of the value of the defendants' possession were, in the opinion of this court, unsustained by the evidence, either for want of sufficient value in the property itself, or in the mortgages of defendants, it would be reversed; but an examination of the bill of exceptions shows that it is not only fully sustained in respect to the general value of the property, but that it was the contention of the plaintiff throughcut the trial, that such value, at some stage of the proceeding, was far greater than that of the possession, as found by the court.

The judgment of the district court is affirmed.

JUDGMENT AFFIRMED.

THE other judges concur.