L. D. HAMILTON ET AL. v. MAX ISAACS ET AL.

[FILED MAY 18, 1892.]

1. **Insolvency:** PREFERENCE OF CREDITORS.    One D., being in failing circumstances and owing money to numerous creditors, executed separate chattel mortgages to six creditors upon his stock of merchandise.    The said mortgages were given at the same time and to secure the *bona fide* indebtedness of D. to the

several mortgagees. It was the intention of all parties that the mortgagees should prorate in the proceeds of the mortgaged property, which intention was evidenced by the following recital in each mortgage: " This is made at the same time and is to prorate with mortgages made to " (here follows a description of each of the other mortgages). There being no trust created by the mortgages, *held*, that the transaction did not amount to an assignment for the benefit of creditors.

2. **Jurisdictional Defects: Waiver.** A defendant, by answering and submitting to the jurisdiction of the court by trial on the merits, thereby waives all irregularities in the summons or other process by which it is sought to acquire jurisdiction of his person.

3. **Review.** Evidence examined, and *held* to fully sustain the verdict of the jury.

Error to the district court for Polk county. Tried below before Smith, J.

*E. P. Holmes*, and *J. L. McKeever*, for plaintiff in error.

*E. L. King*, and *M. A. Mills, contra*, cited: *Bonns v. Carter*, 22 Neb., 495; *Martin v. Hausman*, 14 Fed. Rep. [Mo.], 166; *Woonsocket Rubber Co. v. Falley*, 30 Fed. Rep. [Ind.], 808; *Housel v. Cremer*, 13 Neb., 298; *Lininger v. Raymond*, 12 Id., 19; *Grimes v. Farrington*, 19 Id., 48; *Nelson v. Garey*, 15 Id., 531; *Bierbower v. Polk*, 17 Id., 268; *Sloan v. Coburn*, 26 Id,, 608; *Aultman v. Aultman*, 32 N. W. Rep. [Ia.], 240; *Field v. Fisher*, 32 N. W. Rep. [Mich.], 838; *Gage v. Parry*, 29 N. W. Rep. [Ia.], 822; *Ingram v. Osborn*, 35 N. W. Rep. [Wis.], 304; *Davis v. Scott*, 22 Neb., 154; *Southern White Lead Co. v. Hass*, 33 N. W. Rep. [Ia.], 657; *Van Patten v. Thompson*, 34 Id., 763; *Tootle v. Coldwell*, 1 Pac. Rep. [Kan.], 329; *Doremus v. O'Harra*, 1 O. St., 45; *Atkinson v. Tomlinson*, 1 Id., 237; *Sloan v. Coburn*, 26 Neb., 607; *Keens v. Gaslin*, 24 Id., 316; *Berrer v. Moorhead*, 22 Id., 688; *McKeighan v. Hopkins*, 19 Id., 33; *Buck v. Reed*, 27 Id., 70; *Dorrington v. Minnick*, 15 Id., 400; *Waters v. Reu-*

*ber*, 16 Id., 101; *Hoey v. Pierson*, 30 N. W. Rep. [Wis.], 692; *Gallagher's App.*, 7 Atl. Rep. [Pa.], 237.

POST, J.

On the 2d day of April, 1888, H. C. Dunning, who was then engaged in business as a general merchant at Osceola, Polk county, executed separate mortgages upon his stock of merchandise in favor of the defendants in error amounting in the aggregate to $2,866.50. Said mortgages were all given to secure the *bona fide* debts of the mortgagor then past due, to-wit, to Max Isaacs & Son, $262; to Tootle, Hosea & Co., $361.98; to Schuster, Hingston & Co., $1,196; to Barber Bros., $715.58; to Turner, Jay & Co., $161, and to Vinyard & Schneider, $171. Said mortgages were all executed and delivered at the same time and all filed for record at one time. It was the intention of all parties thereto that the several mortgages should share *pro rata* in the proceeds of the mortgaged property in case it was not sufficient to satisfy all. As evidence of such intention the following provision was written in each of said mortgages: "This is made at the same time and is to prorate with mortgages made to" (here follows a description of each of the other mortgages).

On the delivery of said mortgages, Mr. King, as attorney for Max Isaacs & Son, Tootle, Hosea & Co., and Schuster, Hingston & Co., and Mr. Mills, as attorney for the other mortgagees, immediately took possession of the property in controversy by virtue of the said mortgages and continued in possession thereof until dispossessed by the plaintiff in error, Hamilton, sheriff of said county, April 7, by virtue of orders of attachment against said Dunning in favor of H. P. Lau and J. J. Brown & Co. Dunning, at the time in question, was indebted to other parties, and subsequent to said time executed other mortgages on the same property to the amount of $2,391.34, all of which were by their terms made subject to the mort-

gages of defendants in error. Plaintiff in error Hamilton, on taking possession of the said property, proceeded to sell, it to satisfy the orders of attachment aforesaid. In an action in the district court of Polk county defendants in error recovered judgment against the said sheriff and the other plaintiffs in error, sureties on his official bond, for the amount of the several mortgages, for the taking and conversion of the property aforesaid, which judgment we are now asked to reverse on account of alleged errors which will be noticed hereafter.

It is first contended that the petition fails to state a cause of action, and that the court erred in overruling a demurrer thereto. The second amended petition on which the cause was tried is in the usual form in an action on a sheriff's bond for the conversion of property in the execution of a writ against a stranger except that the facts are set out more in detail than is usual or perhaps necessary. Counsel make the general objections only, and we are unable to observe any infirmity in the petition and think the trial court did not err in overruling the demurrer. The cause of action stated in the first petition was in favor of Max Isaacs & Son only, and against the sheriff only. Afterward the latter moved the court to require the plaintiff to make all of the mortgagees herein named parties to the action in order to avoid a multiplicity of suits, which motion was sustained and leave given to the plaintiff to file an amended petition. Thereupon the defendants in error filed the petition in question and joined the sureties of the sheriff with him as defendants, setting out his official bond in order to recover thereon. The sureties having been served with summons, the defendants challenged the jurisdiction of the court on the ground that the nature of the action had been changed from one of conversion against the sheriff only to one on his official bond, leave not having been given to make the said sureties defendants, which was overruled and exceptions taken.

They afterward joined in an answer and the cause was tried upon its merits. The plaintiffs in error have waived any possible error in the overruling of this challenge. The court certainly had jurisdiction of the subject of the action. By answering they have submitted themselves to the jurisdiction of the court and cannot now complain. (*Dorrington v. Minnick*, 15 Neb., 400; *Waters v. Reuber*, 16 Id., 101; *Buck v. Reed*, 27 Id., 70.)

The real contention in the case is with reference to the several mortgages. It is claimed by plaintiffs in error that the transaction amounts to a general assignment for the benefit of creditors, and is therefore void as against creditors of Dunning, since it is not made in conformity with the statute regulating voluntary assignment, chapter 6, Compiled Statutes.

It is insisted that the facts in this case bring it within the rule announced in *Bonns v. Carter*, 20 Neb., 566. In that case the conveyance under consideration was held by a majority of the court to create an express trust in favor of the seven creditors named therein, and in legal effect an assignment for the benefit of creditors, and therefore void as against attaching creditors. In this case there is no trust within the common meaning of the term. It is true that every chattel mortgage contains a trust in one sense. It necessarily creates a trust in favor of the mortgagor as to any surplus. In that sense it may be said that there is a trust in this case. It may be conceded, also, that by virtue of the conditions of the mortgages, a trust is contemplated as against each mortgagee in favor of each of the others. That a debtor in failing circumstances may secure one or more of his creditors by mortgage or transfer absolute of a part or all of his property is a proposition settled by repeated decisions in this state. Nor does the fact that the mortgagor is insolvent affect his right to prefer one creditor to the exclusion of others. The only limitation upon his right in that respect is that the transaction must be in

good faith, and not a device made use of in order to defraud other creditors. (*Davis v. Scott*, 22 Neb., 154; *Hershiser v. Higman*, 31 Id., 531; *Brown v. Williams*, 34 Neb., 376.) The fact that the mortgagees in this case are required to prorate in the proceeds of the mortgaged property does not change the character of the transaction. It is not an assignment for creditors within the rule in *Bonns v. Carter*, since it lacks the essential element of a trust in favor of some person or persons other than the mortgagee or assignee.   This case does not differ in principle from *Hershiser v. Higman*.   It is true there was in that case no provision requiring the mortgagees to prorate.   At the time of the execution of the mortgages Dunning was authorized to prefer the claims of defendants in error and to make provision for their payment.   Having the right to prefer the claims in question to those of other creditors there is nothing to prevent him from placing them on terms of equality as between themselves.

We agree that the transaction involved is not an assignment for the benefit of creditors, and that the relation between Dunning and defendants in error is that of mortgagor and mortgagees.   The question, therefore, of the validity of the mortgages is dependent upon the question of actual good faith or fraudulent intent as to other creditors.   This question was fairly submitted to the jury, and the verdict is clearly in accordance with the evidence.   There is in fact no evidence of an intent on the part of any of the parties to defraud any of Dunning's other creditors, and the verdict cannot be disturbed on that ground.

Exception is taken to two of the instructions given on the court's own motion, as follows:

"Eighth—If you believe from the evidence that the mortgages, under which the plaintiffs claim title to the stock of goods in question, were made at one and the same time, and as one transaction, that the same were made for the purpose of transferring the stock of goods in question

to plaintiffs for the purpose of placing said stock of goods beyond the reach of the creditors of H. C. Dunning, or to hinder and delay the creditors of said Dunning in the collection of their claims against said Dunning, or for the purpose of transferring said property to the plaintiffs for the purpose of securing their claims, and reserving any residue after the payment of said claims for the use and benefit of said Dunning, then said mortgages would be fraudulent and void in law, but these are questions of fact to be determined by the jury from a consideration of all the evidence in the case.

"Ninth—You are instructed that while a *bona fide* creditor may take adequate security from his debtor, who is in failing circumstances, by chattel mortgage upon personal property for his own claim, yet he cannot hinder and delay or defraud other creditors in the collection of their claims by placing the debtor's property beyond their reach, by taking a mortgage to secure a grossly inadequate debt; and in this case if you believe from the evidence that the mortgages, under which plaintiffs claim title to the stock of goods in question, were made for the purpose of hindering, delaying, or defrauding the creditors of said H. C. Dunning, or that said Dunning, being insolvent, conveyed by chattel mortgage to the plaintiffs personal property largely in excess of what was necessary for their own security, and thereby prevented its application to the payment of other debts owing by the said Dunning, then such chattel mortgages would be fraudulent and void in law, and you should return a verdict for the defendants."

There is no error in these instructions.     The question of fraud or good faith under the issues was one of fact for the jury, and the instructions complained of correctly state the law of the case.     Plaintiffs in error requested a number of instructions which were refused, which ruling is assigned as error.     It is not necessary to copy them as they are in effect but different statements of one proposition, viz., that

the several mortgages constitute a general assignment and are therefore void. For reasons already stated the instructions were properly refused. While I concur in holding that this case is not within the rule in *Bonns v. Carter*, I do not wish to appear as assenting to the conclusion of the majority of the court in that case. To my mind the reasoning of Judge REESE in the dissenting opinion (22 Neb., 495) is the more satisfactory, and his conclusion is certainly supported by the majority of well considered cases. I cannot hope to add anything to that opinion in the way of reasoning, but will notice a few of the cases subsequently decided.

In *Hargadine v. Henderson*, 97 Mo., 375, a debtor conveyed all of his property not exempt from execution, including a stock of merchandise, to one H., designating the latter as trustee for the purpose of securing five creditors, including the said trustee as surety on one of the said claims, with power to sell at private sale, and after paying said debts to account to him for the balance, if any. It was held that the instrument was a mortgage and not an assignment.

In *Robson v. Tomlinson*, 54 Ark., 229 [15 S. W. Rep., 456], Cockrill, chief justice, after citing with approval *Bank v. Crittenden*, 66 Ia., 237, says: "The controlling guide according to decisions of this court is, was the intention of the parties, at the time the instrument was executed, to divest the debtor of the title and so make an appropriation of the property to raise a fund to pay debts. In arriving at the intent of the parties the question is not whether the debtor intended to avail himself of the equity of redemption by paying the debt, but was it the intention to reserve the equity. If so the instrument is a mortgage and not an assignment."

In *Muchmore v. Budd*, New Jersey court of appeals, 22 Atl. Rep., 518, one C. made an absolute bill of sale of all his property, except wearing apparel, to S. The bill of sale

was accompanied by an agreement in parol that S. should sell the goods and first satisfy certain claims due himself, and pay the amounts due to three other creditors *pro rata* and return the surplus, if any, to C., the latter reserving the right to redeem before sale. It was held that the transaction was not an assignment but a mortgage. It is true that five of the sixteen judges dissent from the conclusion of the majority, but the ground of their dissent is the peculiar provision of the statute of that state, viz., "that every conveyance or assignment by a debtor  *  *  *  in trust to the assignee or assignees for the creditors of such debtor shall be made for their equal benefit in proportion to their several demands, and all preferences of one creditor over another  *  *  *  shall be fraudulent and void." The above provision is substantially the same as those found in the statutes of New York and Wisconsin, which, as Judge REESE suggests, is much more comprehensive than ours and includes all voluntary transfers and conveyances for the benefit of creditors.

In *Warner v. Littlefield,* supreme court of Michigan, 50 N. W. Rep., 721, one W. gave a chattel mortgage to the plaintiff, who was not a creditor, as trustee, conditioned that he would pay the claims of certain creditors within ten days and save certain other parties harmless from obligations assumed for his accommodation. In case of foreclosure the proceeds were to be distributed *pro rata* among the creditors. In an action by an unsecured creditor it was held that the instrument was a mortgage and not an assignment. In the opinion of the court, Champlin, chief justice, says: "The instrument must be read as a whole and the intent gathered from its entire contents. By naming him as trustee the conveyance did not vest in him the absolute title to the property and place it beyond the reach of creditors. If valid, the mortgagor and subsequent lienholders had a right of redemption. Not so if it was a common law assignment." True, the term common law as-

signment is not used in our statute as in that of Michigan, but it will be conceded, I assume, that the object of ours is to regulate common law assignments. The Michigan statute is therefore not essentially different from ours.

In *Hembree v. Blackburn*, supreme court of Oregon, 19 Pac. Rep., 73, the court, after citing with approval Jones on Chattel Mortgages and Herman on Chattel Mortgages, say: "The distinction is one clearly defined. A mortgage or deed of trust in the nature of a mortgage is a security for a debt. An assignment is more than that. It is an absolute appropriation of property to the payment of debts. A mortgage creates a lien upon property in favor of creditors, leaving the equity of redemption still the property of the debtor and liable to sale or incumbrance by him." To the same effect are *Campbell v. Col. C. & I. Co.*, 9 Colo., 60; *Fitzgerald v. McCandlish*, 50 N. W. Rep. [Mich.], 860, and *Weber v. Childs*, 51 Id. [Mich.], 543.

In Pomeroy's Equity Jur., sec. 995, in discussing the subject of deeds of trust to secure debts to creditors named therein, it is said that such instruments, although they authorize the trustee to sell the property and pay the debts provided they are not paid by the debtor within the time named, are mortgages only, and have come into general use as such in many of the states.

I have not, in the course of a careful examination of the authorities, observed that the case of *Bonns v. Carter* has been once cited with approval. Nor have I found a case subsequently cited which sustains the conclusion of the court in that case. The only conveyances or transfers of property intended to be affected by our statute are common law assignments. That is apparent from its title, viz., "An act regulating voluntary assignments for the benefit of creditors, the proceedings thereunder, and to prevent the fraudulent violation of the same." The statute in no other respect or upon no other conditions seeks to interfere with the dominion which at common law the

Hamilton v. Isaacs.

debtor may exercise over his own property, and which is an incident to his ownership.    The act in question is not a bankrupt law, and should not be construed as such.    It will not do to dismiss the subject with the remark that the rule of the common law is arbitrary, unreasonable, or unjust.    First, because the law favors the rights of the owner, and statutes tending to limit his rights have, in this country, been received with disfavor and, as a rule, have been of short duration.    For instance, congress has since the year 1799 enacted three general bankrupt laws which have in turn been repealed in obedience to public sentiment.    Second, the rule is that, except so far as modified by statute, contracts are made and credit given with reference to the common law; that is, the merchant who trusts his customer for goods sold does so with knowledge of the rule as it exists at common law, namely, that the dominion of the latter over his property is absolute, and in case of insolvency he may prefer one or more of his creditors to the exclusion of others, with the exception that in case he chooses to make an assignment for the benefit of his creditors, such assignment shall be for the benefit of all his creditors.    The judgment of the district court is

AFFIRMED.

MAXWELL, CH. J., concurs.

NORVAL, J., did not sit.