$5\,6-3\,9\,0$

## William R. Jones, Sheriff, v. William M. Loree et al.

### Filed October 4, 1893. No. 5038.

1. **Chattel Mortgages: Excessive Security.** Where several chattel mortgages are executed simultaneously for the purpose of securing debts owing by the mortgagor to the mortgagees, the aggregate of such indebtedness not being unreasonably less than the value of the property mortgaged, such mortgages will not be held void merely because no one of such debts is in itself sufficient to justify so great a security.

2. ————: **Preferred Creditors: Voluntary Assignments.** Several chattel mortgages made and delivered simultaneously to secure different creditors of the mortgagor, the delivery being to one of the mortgagees, who in the transaction acts for himself and on behalf of all the other mortgagees, do not constitute an assignment for the benefit of creditors.

3. ————: ————: ————. *Bonns v. Carter*, 20 Neb., 566, overruled.

4. ————: ————: **Fraudulent Conveyances.** A mortgage taken by a creditor to secure a pre-existing debt will not be held void merely because the creditor, when he took the mortgage, had notice of an intent upon the part of the mortgagor to hinder, delay, or defraud his creditors. In order to avoid such mortgage the creditor must have participated in such intent.

5. ————: ————: ————. An intention to defraud cannot be inferred merely from the fact that a preference was given to a certain creditor.

6. ————: ————: ————: **Replevin: Instructions.** Certain instructions requested, examined, and *held* to be rightly refused.

7. ————: ————: ————: ————: **Evidence: Harmless Error.** Error committed in the admission in evidence of a written instrument, without proof of its execution, is cured where such proof is afterwards made before the party offering the instrument has rested his case.

8. ————: ————: ————: ————: **Instructions.** Where several mortgagees joined as plaintiffs in an action to replevy property covered by their mortgages, which had been taken from their possession under writs of attachment against the mortgagor, and the issue was as to whether these mortgages were void as to

creditors, the facts differing as to the different mortgages, an instruction to the jury to find generally for the plaintiffs, if they should find that any one of the mortgages was good, is erroneous.

ERROR from the district court of Gage county. Tried below before BROADY, J.

The facts are stated in the opinion.

*Griggs, Rinaker & Bibb, J. E. Cobbey,* and *George B. Everitt,* for plaintiff in error:

If the several mortgages are construed separately and as independent transactions, then they and each of them are void as covering all of the property of the debtor, and property greatly in excess of the debt. (*Smith v. Boyer,* 29 Neb., 77; *Morse v. Steinrod,* Id., 108; *Brown v. Work,* 30 Id., 801; *Russell v. Lau,* Id., 805.) If the several mortgages are considered together as constituting one transaction, then the same amounts to an assignment for the benefit of creditors, and is void as not being in conformity with the assignment law. (*Bonns v. Carter,* 20 Neb., 566; *Mackie v. Cairns,* 5 Cow. [N. Y.], 547; *D'Ivernois v. Leavitt,* 23 Barb. [N. Y.], 63; *Bridges v. Hindes,* 16 Md., 101; *Richmond v. Mississippi Mills,* 11 S. W. Rep. [Ark.], 962; *Omaha Book Co. v. Sutherland,* 10 Neb., 335; *Kohn v. Clement,* 58 Ia., 593; *White v. Cotzhausen,* 129 U. S., 329; *Winner v. Hoyt,* 66 Wis., 227; *Norton v. Kearney,* 10 Id., 443*; *Freund v. Yaegerman,* 26 Fed. Rep., 814; *Martin v. Hausman,* 14 Id., 160; *Kellog v. Richardson,* 19 Id., 70; *Perry v. Corby,* 21 Id., 737; *Clapp v. Dittman,* Id., 15; *Clapp v. Nordmeyer,* 25 Id., 71; *Kerbs v. Ewing,* 22 Id., 693; *Bean v. Patterson,* 12 Id., 739; *Robinson v. Elliott,* 22 Wall. [U. S.], 523.) The court erred in giving the fourth instruction to the jury. (*Tootle v. Dunn,* 6 Neb., 99; *Savage v. Hazard,* 11 Id., 328; *Temple v. Smith,* 13 Id., 513; *Bollman v. Lucas,* 22 Id., 813; secs. 17, 21, ch. 32, Comp. Stats., 1889.) The

55

court erred in refusing to give the fifth instruction asked by defendant. (*Morse v. Steinrod*, 29 Neb., 108; *Brown v. Work*, 30 Id., 801.) The twelfth instruction asked by the defendant should have been given. (Bump, Fraudulent Conveyances [3d ed.], p. 54; *Comstock v. Rayford*, 20 Miss., 369; *King v. Moon*, 42 Mo., 551; *Dorn v. Bayer*, 16 Md., 144; *Venable v. Bank of United States*, 2 Pet. [U. S.], 107; *Pickett v. Piphin*, 64 Ala., 520.)

*Rickards & Prout*, contra, insisting that the mortgages are valid, cited: *West v. White*, 56 Mich., 126; *Brown v. Smith*, 7 B. Mon. [Ky.], 361; *Chase v. Walters*, 28 Ia., 469; *Davenport v. Cummings*, 15 Id., 225; *Hershiser v. Higman*, 31 Neb., 531. A debtor has the right to prefer his creditors, and to pay or secure those preferred. Chattel mortgages to preferred creditors, if made in good faith to secure *bona fide* debts, even if made to a considerable number of such creditors, are valid. (*Davis v. Scott*, 22 Neb., 154; *Kohn v. Clement*, 12 N. W. Rep. [Ia.], 550).

IRVINE, C.

Charles E. Briggs was the owner of a stock of boots and shoes in Beatrice. Upon the 23d day of December, 1890, he executed a chattel mortgage to William M. Loree for $1,723.55; one to Emeline M. Briggs for $1,035.62; one to Mary Higgins for $1,549, and one to Anne Higgins for $430.33. These four mortgages were all made to cover the stock of goods referred to, were recorded in the order named, and by the terms of the mortgages themselves were given priorities in that order. Subsequently, upon the 24th day of December, there was executed to W. V. Morse & Co., Smith, Blasland & Co., and the W. W. Kendall Boot & Shoe Co., another mortgage to secure indebtedness to the parties named, amounting to $601.30. Upon the delivery of the four mortgages first named, Loree, on his own behalf and as agent of the other three

mortgagees, took possession of the stock of goods. After the execution of the last mortgage he was requested to hold possession under that mortgage on behalf of the mortgagees named therein. Subsequently attachments and executions were issued against Charles E. Briggs on behalf of a number of creditors, and the plaintiff in error, as sheriff of Gage county, seized the stock of goods under these attachments and executions as the property of Charles E. Briggs.

This suit was brought in replevin by the mortgagees, and the goods were taken under the writ and delivered to the plaintiffs, in whose favor, upon the trial, there was a verdict and judgment. The plaintiffs, of course, claimed under their mortgages. The defendant justified under the attachments and executions, claiming the mortgages were fraudulent as against creditors whom he represented. Numerous errors are assigned.

The plaintiff in error undertakes to present a dilemma as follows: That if the several mortgages are to be construed separately and as independent transactions, then each of them is void, because covering all the property of the debtor and property greatly in excess of the debt; and upon the other hand, if the mortgages are to be taken together as constituting a single transaction, then the same amounts to an assignment for the benefit of creditors and is void because not in conformity with the assignment law.

Upon the first branch of this argument it is sufficient to say that the mortgages to Loree, Mrs. Briggs, and the two Higginses are shown conclusively by the evidence to have been given at one time as part of the same transaction, Loree acting, in taking the mortgages, on his own behalf and as agent for the other mortgagees. For the purpose of considering the proportion existing between the property mortgaged and the debts secured, the court instructed the jury that they were to be considered as one transaction. The reason of the rule avoiding, as against creditors, conveyances of property in value greatly in excess of a debt

secured by such conveyances is that such a conveyance nec-
essarily operates to hinder and delay, if not to defraud,
other creditors; that it evinces an intention upon the part
of the debtor to do more than secure the creditor pre-
ferred, and practically conclusively proves an intent upon
his part to deprive other creditors of their remedies.
From the nature of the transaction the creditor preferred is
chargeable with notice of such design, and is shown by his
act of taking grossly disproportionate security to have par-
ticipated in the fraudulent intent.  But when a number of
small debts are secured upon property not disproportionate
to the aggregate amount of these debts no such effect fol-
lows and no such intention can be imputed either to grantor
or grantees.  This court has repeatedly sustained a series
of conveyances of this character.  Among such cases are
*Hershiser v. Higman,* 31 Neb., 531; *Hamilton v. Isaacs,*
34 Neb., 709.

Upon the second branch of the dilemma, counsel rely
upon the case of *Bonns v. Carter,* 20 Neb., 566, and 22 Neb.,
495.  There the decision was that a mortgage made to one
person as trustee to secure debts owing several creditors
amounted to an assignment because of the trust created.
In this instrument no such trust was created upon the
face of the instrument, and such cases have not been held
within the rule in *Bonns v. Carter.* (*Hershiser v. Higman,*
*supra; Hamilton v. Isaacs, supra; St. Louis Wrought
Iron Range Co. v. Meyer,* 31 Neb., 543.)

But if the case can be considered as falling within the
rule of *Bonns v. Carter,* by reason of the fact of Loree's
actual agency for all the mortgagees, still we do not think
the transaction offended against the assignment law.  *Bonns
v. Carter* was decided by a divided court, upon a rehearing.
The views expressed by Judge Maxwell, in announcing
that the majority of the court adhered to its former judg-
ment, show that in that adhesion the court was influenced
chiefly by other elements rendering that particular transac-
tion fraudulent.

Recently the case has not been adhered to, and in *Hamilton v. Isaacs, supra,* it was practically overruled. The views expressed by Judge REESE in the dissenting opinion, 22 Neb., 495, and by Judge POST in *Hamilton v. Isaacs, supra,* present very clearly and forcibly the reasons against the adoption of any such rule. *Bonns v. Carter,* in this respect, can no longer be considered as expressing the law of the state.

2. The next question presented is raised by the fourth paragraph of the court's instructions. In this instruction the jury was told: "If the mortgagor intended to hinder or defraud creditors and the mortgagee knew it, that would not make the mortgage void unless the mortgagee also intended, by taking the mortgage, to hinder or defraud creditors, and that was in part his purpose in taking it. A creditor has a right to take a chattel mortgage on a reasonable amount of his debtor's personal property as security for his *bona fide* pre-existing debt, and the debtor has a right to make such preference of his creditors, even though the effect thereof be to defeat, hinder, or delay other creditors in the collection of their debts; and this is so even if the parties knew that such would be the effect, and even though the property so taken as security was all the debtor had, but in value reasonably proportionate to the amount justly owing to the creditors so preferred."

Plaintiff in error argues that this instruction is in violation of the rule established in *Tootle v. Dunn,* 6 Neb., 99; *Savage v. Hazard,* 11 Id., 323; *Temple v. Smith,* 13 Id., 513; and *Bollman v. Lucas,* 22 Id., 813. These cases establish the rule that a purchaser of goods from a debtor knowing or chargeable with notice of the debtor's fraudulent intent is not a purchaser in good faith, and that the sale is void as against creditors.

Each of these cases was the case of a sale, and the rule is undoubtedly correct as applied to such cases. The court's instruction was given upon the theory that a distinction

exists between a sale or security given for a debt created at the time of the giving of security, and a security given for a pre-existing debt. We think the distinction is well founded. To give any effect at all to the rule established by so long a line of authorities that their citation would be useless,—that a debtor even in failing circumstances may secure a creditor to the exclusion of others, provided the transaction be *bona fide*,—we must draw the distinction pointed out by the trial judge.

To say that knowledge upon the part of an existing creditor of the debtor's intention to defraud creditors would render any security demanded by such creditor fraudulent would be equivalent to saying that the creditor is estopped from protecting himself by knowledge of the very facts which warrant him in seeking protection. A fraudulent intent may be very properly imputed to a stranger who knowingly assists the debtor in defeating his creditors by a purchase of the debtor's property, but no such intent can be imputed to an existing creditor because of his knowledge of such intent, when for the sole purpose of protecting himself he receives sufficient and reasonable security for that purpose. We think this instruction stated the law with perfect accuracy. The mere knowledge of the debtor's fraudulent intent would not defeat the mortgage; but the participating therein on the part of the mortgagee, or any motive upon his part not consistent with good faith, would have that effect. The following authorities sustain this view of the law : *Chase v. Walters*, 28 Ia., 460; *Kohn v. Clement*, 58 Id., 589; *York County Bank v. Carter*, 38 Pa. St., 446.

3. The refusal of the court to give certain instructions asked by the defendant is assigned as error.

The fifth instruction requested and refused is in the words of the opinion in *Morse v. Steinrod*, 29 Neb., 108 : "The right of a debtor to prefer creditors is very much restricted in this state by virtue of the attachment, assign-

ment, and other laws, and will not be applied in any case where a just and fair distribution of the proceeds of the debtor's property can be made among all his creditors." To have given this instruction would have left the jury without any information as to the manner in which the right of a debtor to prefer his creditors is restricted, and would leave them to infer that they might arbitrarily set aside such preferences if they thought a fairer distribution of the property might be made. To have given such an instruction would have been manifest error.

The sixth instruction requested would have left to the jury the right to infer fraud from the fact that a preference was made. This is not the law of this state and it would be supererogatory to discuss the question further.

The twelfth instruction requested was that if Loree, "prior to the making of the mortgages in controversy in this case, took particular pains to exhibit the notes claimed to have been given him by the said Charles E. Briggs to a number of different persons in Vinton, Iowa, then the jury have the right to take this fact into consideration in arriving at their verdict." This instruction was not applicable to the evidence. There was no evidence whatever that Loree took particular pains to exhibit the notes to a number of different persons. Several witnesses testified that at different times they had seen the notes, but in each case the domestic or business relations of such witnesses with Loree were of such a character as to forbid an inference that Loree had exhibited the notes for the purpose of manufacturing evidence in his own behalf.

The fifteenth instruction was that the burden of proof was upon the plaintiffs to prove all the material allegations in their petition. The sixth instruction given by the court of its own motion is that the "burden of proof is now on the plaintiffs to sustain the validity of their mortgages by a preponderance of evidence. If they have shown that the making of the mortgages was accompanied by an

immediate delivery and was followed by an actual and continued change of possession of the things mortgaged, until the seizure by the sheriff under the writs of attachment, without otherwise discrediting the good faith of the mortgagees, then the burden of proof shifts and is on the defendants to show that the mortgage is not good; but if the mortgagees were not in actual possession of the things mortgaged at the time of the levy of the attachment, the mortgages are presumed to be fraudulent and void as to creditors, and the burden is upon the plaintiffs to prove the good faith of the mortgages, and that they were not taken by mortgagees to defraud creditors. Subject to the above statutory *prima facie* presumptions, the law is that fraud is not to be presumed without proof, but must be clearly established by evidence." This instruction clearly and accurately states the law as to the burden of proof upon the only issues in the case which proved to be disputed, and the instruction upon the burden of proof asked by defendant was rightly refused.

The seventeenth instruction requested submitted to the jury special findings in favor of the two Higginses and against the other plaintiffs. The good faith of all the mortgages was properly left to the jury, and the submission of these findings would, under the evidence, have been erroneous. The other instructions refused were either covered by others given or were in conflict with those we hold above to have been rightly given.

The admission in evidence of the mortgage to Loree is assigned as error. The objection urged is that there was no proof of its execution by Briggs. It is true that immediately before it was offered no question was asked as to who signed the paper, but the testimony in the case identified the instrument and elsewhere proves its execution. Any error in admitting it without such preliminary proof was cured by the making of proof before the case was rested.

Jones v. Loree.

4. The court instructed the jury that "if any of the plaintiffs' mortgages are good against the defendant, the verdict must be for the plaintiffs; but if none of the plaintiffs' mortgages are good against the defendant, the verdict must be for the defendant for the right of possession. Replevin is a legal possessory action. All adjustments of equitable interests and distribution of proceeds must be deferred to some subsequent proceeding." In this instruction we think the court erred. It is true that if any of the mortgages was good, the seizure by the sheriff was wrongful, and the mortgagee under the valid mortgage might alone maintain replevin for all the mortgaged property; so that the existence of any valid mortgage on behalf of any of the plaintiffs would require a judgment against the sheriff as to the right of possession of all the property, and there could be no judgment in such case in his favor requiring a restitution of the property. It is also true that under our Code all these mortgagees could properly join as plaintiffs. (*Earle v. Burch*, 21 Neb., 702.)

But it does not follow that mortgagees, under fraudulent mortgages, may join with *bona fide* mortgagees in an action of replevin and obtain judgment in their favor because of the valid mortgages in which they have no interest. The verdict and judgment in this case constitutes an adjudication in favor of each one of the plaintiffs against the sheriff as to the right of possession of the property; whereas, under the instructions given, the jury may have found for the plaintiffs generally because they found that one, and only one, of the mortgages was *bona fide*. The reason given by the trial judge for this instruction was, that replevin, being a legal possessory action, all questions of distribution must be reserved for other proceedings; but section 429 of the Code provides that judgment may be for or against one or more of several plaintiffs and may determine the ultimate rights of the parties as between themselves. This section applies to suits in replevin. (*Earle v. Burch*, 21 Neb., 702, *supra*.)

In replevin the plaintiff must recover on the strength of his own title and not upon the weakness of his adversary's. (Cobbey, Replevin, 99, and cases cited.)   If, therefore, any of the plaintiffs failed to establish his own right of possession he was not entitled to a judgment adjudicating such right in his favor.   The court should have instructed the jury that, in case they found any of the mortgages valid and some invalid, they should find in favor of such plaintiff or plaintiffs as had established the validity of his or their mortgages, and against the others.   The error was prejudicial because of its result in adjudicating the rights between all the parties.

5. We believe we have covered all the assignments of error referred to in the briefs of counsel.   The brief of plaintiff in error contains reflections upon the conduct of the trial judge which go so far as to insinuate that he was purposely unfair.   Such remarks are always out of place; they are unprofessional, and when indulged in demand that they should be met with fitting censure.   A careful examination of the record shows that the trial judge conducted the case with impartiality, dignity, and marked ability and precision.   The judgment must be reversed upon the sole ground of the error in the eighth instruction.

Reversed and remanded.

The other commissioners concur.