LANDAUER, KAIM & STRENG V. G. H. MACK & COM-
PANY.

FILED JANUARY 5, 1895.    No. 4872.

1. **Attachment:** ISSUES ON MOTION TO DISSOLVE.  On the hear-
ing of a motion by a defendant to discharge an attachment
allowed in an action against him on the ground that he had
fraudulently disposed of his property with intent to defraud
creditors, the alleged fraudulent transaction being the convey-
ance by mortgage of certain property, the validity of such
mortgage is not put in issue and cannot be determined.  *Mc-
Cord v. Krause*, 36 Neb., 764.

2. **Fraudulent Conveyances:** PREFERRING CREDITORS.  While
it is permissible for an insolvent debtor to prefer one or more
creditors to the exclusion of others, such preference must be an
honest one and not a device to enable the debtor to fraudulently
delay or defeat other creditors.

3. ——— : ———.  The fact that a preference is given to a *bona fide*
indebtedness is not of itself sufficient protection even for the
creditor, provided he was aware of and participated in a purpose
to fraudulently defeat the claims of other creditors.

4. **Attachment.**   In order to sustain an attachment as against the
defendant, it is sufficient to establish the existence of one or
more of the statutory grounds therefor as against him, without
regard for the rights of other parties.

5. ——— : SUFFICIENCY OF EVIDENCE TO SUSTAIN AFFIDAVIT.
Evidence examined, and *held* to sustain the statement in the
affidavit for attachment.

6. ———.   *Landauer v. Mack*, 39 Neb., 8, overruled.

REHEARING of case reported in 39 Neb., 8.

*Chas. Offutt,* for plaintiff in error.

*Bartlett, Crane & Baldrige* and *E. R. Duffie, contra.*

POST, J.

A former opinion in this case will be found in 39 Neb., 8. A re-examination of the record led to the conclusion that the order of the district court discharging the attachment rests upon a finding in favor of the validity of the mortgages mentioned in the opinion rather than the want of grounds for attachment as against the defendant, and is, therefore, within the rule recognized in *McCord v. Krause,* 36 Neb., 764. Acting upon that conclusion, a rehearing was ordered and the cause again submitted on its merits. It is of the utmost importance in this connection to keep in mind the precise question presented by the motion to discharge, viz., whether the evidence establishes sufficient ground for the attachment as against the defendant Gottlieb H. Mack, doing business in the name of G. H. Mack & Co., and not whether the rights of the several mortgagees are superior to the claims of the plaintiffs. In our consideration of the subject we are embarrased somewhat by the fact that most of the cases cited from this court have turned upon the question of the rights of third persons; and not until the case of *McCord v. Krause, supra,* were the rights of the defendant under like conditions directly presented for determination.

There is offered at this time no criticism of the proposition in the former opinion, that the burden is upon the plaintiff to sustain by a preponderance of evidence the statements of the affidavit for attachment, or proof of facts from which the truth of such statements will be inferred. It is also firmly established by the later decisions of this court that fraud will not be inferred as a matter of law from the preference of one or more creditors by a debtor

in failing circumstances. (*Hershiser v. Higman,* 31 Neb., 531; *Hamilton v. Isaacs,* 34 Neb., 709; *Jones v. Loree,* 37 Neb., 816; *Phelan v. Smith,* 40 Neb., 765.)   Among the facts disclosed by the record we notice that the sheriff of Douglas county, Wm. Coburn, was in possession of the property in controversy as agent of the several mortgagees at the date of the order discharging the attachment.   Were the case at bar one by or against Coburn for the purpose of determining his right of possession of the property, we could, without difficulty, sustain a judgment in his favor on the ground that one or more of the mortgages are *bona fide,* and because he could, by reason of his privity with the mortgagees, successfully interpose in his own behalf any defense existing in their favor.   Inasmuch as our investigation has resulted in a conclusion adverse to the order of the district court, it is deemed proper to refer to some of the salient facts of the case; but preliminary to such examination it should be remarked that the grounds of attachment are that defendant has sold and disposed of his property with intent to defraud his creditors and to hinder and delay them in the collection of their claims; that he is about to sell and dispose of his property with like fraudulent intent, and is about to remove it with intent to cheat and defraud his creditors.

On the 15th day of February, 1890, Mack, the defendant, who was then hopelessly insolvent, executed six different chattel mortgages covering his entire personal estate, and amounting in the aggregate to $22,856.76.   He at the same time executed two real estate mortgages for the aggregate amount of $825.   Among the mortgages executed on that day were the following: One in favor of the First National Bank of Omaha, for $6,908.16; one in favor of Elizabeth Mack, wife of the mortgagor, for $5,939.16; one in favor of S. Trottner and H. Lichtenberg, brothers-in-law, for $2,912.56; and one in favor of Sebastian Trottner, also a brother-in-law, for $2,160,—making a total of $11,-

Landauer v. Mack.

011.72 in favor of near relatives. A number of the mort-
gages made at or about that time were for amounts in
excess of that claimed by the mortgagees,—for instance,
one in favor of the defendant's book-keeper, McLeod, for
$200, when the amount claimed by him was $72.50; one
in favor P. J. Van Slyck, of Omaha, for $325, to secure
an indebtedness of $188.50; one in favor P. Whitlock, of
Richmond, Virginia, for $250, to secure an indebtedness of
$182.50; one in favor of C. Jensen, of New York, for
$1,116.25, to secure an indebtedness of $736.25.

A further reference is required in this connection to the
mortgage in favor of the defendant's wife. It is shown by
the testimony of McLeod, the book-keeper, that a new set
of books were opened by the defendant, January 1, 1890,
and that all of the bills payable were transferred to the
new book, except a note held by Mrs. Mack. The wit-
ness, who is certainly not unfriendly to the defendant, tes-
tified as follows:

Q. Did you have a conversation with G. H. Mack with
regard to that [the credit in favor of Mrs. Mack] at the
the time the new books were being made out?

A. Yes, sir.

Q. State what it was.

A. It was standing on the old book to the credit of
bills payable forty-six hundred and some dollars.

Q. Did it state to whom it was payable?

A. It does on page 18 of the old book. I saw it there,
and asked Mr. Mack what it was for. He said it was a
note Mrs. Mack had for that amount. I asked him if I
should transfer it to the other book, and he said, "No,
close it up to profit and loss," and it was done.

Q. When did that happen?

A. Between the 1st and 15th of January, when I fin-
ished opening this set of books.

Q. Was any change made in the books in that respect
since February 15?

A. Yes, sir. * * *

Q. How long after February 15 was it that you made that entry in her account of this note.

A. I cannot tell. I think it was the 15th. Everything that has been done since then has been done as of the 15th.

Q. What was that entry?

A. To Mrs. Mack, $4,826.53.

Q. Why did you not put the amount of the mortgage note on that date, viz., $5,939.16?

A. I could not put it there. That was not her account.

The mortgages executed on the day above named were, except that in favor of Mrs. Mack, all made without the knowledge or request of the mortgagees, and, according to the testimony of Mrs. Mack, those in favor of her brother, Sebastian Trottner, and the firm of Trottner & Lichtenberg, were executed in accordance with her solicitation. Said mortgage was also filed by the defendant, or under his direction, in the following order: That in favor of the First National Bank of Omaha at 1:15 P. M., on the day of its execution; that in favor of Elizabeth Mack at 1:17 P. M.; that in favor of Sebastian Trottner at 1:19 P. M.; one in favor of Calixto, Lopaz & Co. at 1:20 P. M.; that in favor of Trottner & Lichtenberg at 1:21 P. M., and the others following at like intervals, on the same day. It also appears that Coburn was put in possession by the time, if not before, the last mortgage was filed, and before notice was given to the bank above named of the mortgage in its favor. At that date the defendant was indebted to plaintiffs for merchandise in the sum of $1,849.50. Of that amount the sum of $659.70 matured February 9, and the note therefor had been protested for non-payment. On the 14th, the day preceding the execution of the aforesaid mortgages, Mr. Harris, representing the plaintiffs, called on the defendant and insisted upon payment of the amount then due and security for the unmatured notes. His demand not being productive of satisfactory results, he re-

turned the following morning, when the defendant, according to the affidavit of the latter, offered to pay the balance due on the note first above mentioned, but declined to furnish the security demanded, whereupon Harris became abusive and threatened to cause his property to be attached and his business and credit to be ruined unless security was forthcoming immediately. His affidavit, so far as it relates to that subject, concludes as follows: "This affiant states that said Harris, after making many loud and profane remarks, so loud that it attracted the attention of many of affiant's customers and other persons who were in affiant's store at said time, the said Harris left said store, and this affiant states that immediately afterward he made and executed the four chattel mortgages first above mentioned and described." The mortgages to which reference is therein made are those in favor of the First National Bank, Elizabeth Mack, Sebastian Trottner, and the firm of Trottner & Lichtenberg. About 11:30 A. M. of the same day Mr. Breckenridge called at the store of the defendant for the purpose of presenting for payment a past due bill in favor of the Mutual Union Cigar Company. According to the affidavit of the former, he inquired if the defendent was in trouble, and in reply was assured by the latter that he was not, except as to a claim in favor of the plaintiffs. Defendant at that time mentioned, with an oath, the representative of the plaintiffs who had, as he said, caused him trouble. The affiant then said to him: "If you are crowded so that you have to give chattel mortgages I want you to remember my client," to which the defendant assented; but during that conversation Mr. Coburn came into the store, and to the surprise of the affiant, took possession by virtue of the mortgages above described.

The foregoing, which are in the main undisputed, are selected from the many facts disclosed tending to characterize the transaction so far as the defendant is concerned. It is probable that to the persistence and abuse of the

plaintiff's agent should be attributed the defendant's at-
tempt to defeat their claim; but whatever may have been
his motive, it is reasonably certain that one purpose of the
hurried execution of the several mortgages, without so
much as consulting his own books to ascertain the amounts
due the mortgagees, was to prevent the enforcement of the
plaintiff's claim by resort to legal process.  The evidence
in support of the motion is directed chiefly to the question of
the good faith of the claims secured, and for the purpose of
the present inquiry we assume the mortgages, and each of
them, to represent the *bona fide* indebtedness of the defend-
ant, although it may be doubted whether the explanation of
the mortgage to the defendant's wife is such as to overcome
the presumption of fraud which results therefrom.  It may
be conceded, also, that they were taken by the mortgagees
for the purpose of security only, without notice of any
fraudulent intention on the part of the mortgagor.  The
defendant, however, has suggested no explanation of his
devious course consistent with honesty of purpose on his
own part.  The fact that the preference by an insolvent is
given to a *bona fide* claim is not of itself sufficient, even
for the protection of the mortgagee, provided he was, at
the time the security was accepted, aware of and partici-
pated in a purpose to fraudulently delay or defeat the
claims of other creditors.  Where there is an actual intent
to defraud, no form in which the transaction is put can
shield the property so transferred from the claims of pur-
suing creditors, even though a full consideration be received
therefor. (Kerr, Frauds, 199; May, Fraudulent Convey-
ances, 233; *Starin v. Kelly*, 88 N. Y., 419; *Billings v.
Russell*, 101 N. Y., 226; *Blennerhassett v. Sherman*, 105.
U. S., 117, and cases cited.)  As said in *David v. Birch-
ard*, 53 Wis., 492, "It is not the honesty of the debt se-
cured by, but the purpose of the conveyance, to which the
statute has reference; that an honest debt is an important
factor in the transaction, but if the mortgage was made

with the intent to hinder and delay creditors, then it is void though an honest debt be secured by the instrument." (See, also, *Johnson v. Whitwell,* 24 Mass., 73; *Giddings v. Sears,* 115 Mass., 507; *Shelley v. Boothe,* 73 Mo., 74.)

In order to sustain an attachment as against the defendant it is, for obvious reasons, sufficient to establish the existence of ground therefor as against him without regard to the rights of other parties.   The character of the title or interest acquired by purchase or mortgage from an insolvent debtor is wholly immaterial unless put in issue by creditors.   We will add, in justice to the district judge, that if it were clear from the record that the order complained of was based upon a finding of good faith on the part of the defendant, we would in this proceeding be constrained to accept his conclusion.   But we are satisfied, both from the proofs and the argument on the former submission, that the substantial foundation for the order is a finding in favor of the validity of the mortgages.   It follows that the cause is within the doctrine of *McCord v. Krause, supra,* and must be governed by that case.   The order discharging the attachment is accordingly reversed and the cause remanded to the district court for further proceedings therein in accordance with the opinions.

REVERSED AND REMANDED.