DORSEY B. HOUCK, CONSTABLE, v. ELIZABETH HEINZ-
MAN.

FILED JUNE 30, 1893.   No. 4966.

1. **Fraudulent Conveyances**: MORTGAGES: EVIDENCE: QUES-
TION OF LAW.  Where the facts relied upon to render a mortgage
fraudulent as to creditors appear upon the face thereof or are
undisputed, the question of fraud is one of law for the court.
In all other cases it is a question of fact for the consideration of
the jury.

2. ———: ———: ———: PERISHABLE PROPERTY.  A mortgage
will not be declared fraudulent as to creditors on the sole ground
that among a large number of separate chattels included therein
is a small amount of perishable property which it is impossible
to preserve until the maturity of the mortgage debt, although
such fact may be considered as evidence of fraud.  The ques-
tion of good faith in such case is one of fact and not of law.

ERROR from the district court of Douglas county.
Tried below before DAVIS, J.

*W. H. Thompson* and *Charles Offutt*, for plaintiff in
error.

*Donovan & Evans* and *Gannon & Donovan, contra.*

POST, J.

This was an action of replevin in the district court of
Douglas county in which the defendant in error, plaintiff
below, claimed possession of the property in dispute, to-
wit, two horses, two wagons, and two sets of harness,
through a mortgage from her son William Heinzman, while
the defendant below claimed as constable by virtue of an
order of attachment in an action in which the Omaha
Packing Company was plaintiff, and the said William
Heinzman was defendant.  The first error assigned is the
receiving in evidence of the mortgage through which the
plaintiff below claimed, without sufficient evidence of its

execution by the alleged mortgagor. The plaintiff first introduced in evidence a note payable to her order for $1,250, bearing date of April 18, 1890, due two years after date and bearing interest at 7 per cent purporting to have been signed by William Heinzman. After having testified that the note aforesaid was given for money advanced by her to her son, she was asked:

Q. State if you asked him for any other security.

A. I asked him for a mortgage.

Q. Did you get it?

A. Not just then, I got it afterwards.

Q. You got a mortgage?

A. Yes, sir.

Peter O'Malley county clerk, the proper foundation having been laid, testified:

Q. You may examine that book and see if you can find a mortgage there from William Heinzman to Elizabeth Heinzman?

A. Yes, sir.

Q. Are they numbered in the order in which they are filed?

A. Yes, sir.

Q. What number is that?

A. Number 8; of July, 1890.

The mortgage introduced in evidence bears date of July 1, 1890, and purports to have been executed by William Heinzman to Elizabeth Heinzman to secure a note of the former payable to the latter for $1,250, dated April 18, 1890, due two years after date and bearing interest at 7 per cent. It appears to have been acknowledged before a notary public on the day of its execution and filed in the office of the county clerk on the same day. The property described in the mortgage aforesaid evidently includes the horses, wagons, and harness in controversy. The evidence clearly points to William Heinzman as the mortgagor and we think proves *prima facie* that it was executed by him.

2. But the chief reliance of the plaintiff in error is upon the proposition that the mortgage is by its terms and the character of the property thereby conveyed fraudulent and void as to creditors of the said William Heinzman. The following is the description of property contained in the mortgage: "One bay horse about twelve years old, weight about 1,000 pounds; one sorrel mare about six years old, weight about 1,000 pounds; one meat delivery spring wagon, with red running gear and blue box; one butcher's delivery wagon, with red bed and yellow or straw colored gear; one side-bar buck-board buggy, Drummond make; one set single harness, heavy; one set single harness, light; also, all of the stock and fixtures in the butcher shop situated at number 714 north Sixteenth street, Omaha, consisting of meats, poultry, and ice box, meat blocks, saws, cleavers, meat racks, counters, scales, butcher's knives, meat rocker and block; also all of the book accounts of said butcher shop." It should be observed that the mortgage contains no provision for the sale of any part of the property therein described by the mortgagor, hence the rule announced in *Tallon .v. Ellison*, 3 Neb., 75, has no application. It is suggested, however, that a mortgage of perishable property like meats, poultry, and butchers' stock, which it is obviously impossible to preserve until maturity of the debt secured, implies a power of sale and is therefore presumptively fraudulent. The sound rule is believed to be that such fact does not render the mortgage void *per se,* although it may be considered by the jury as evidence of fraud, the question of fraud or good faith being one of fact and not of law. (See Herman, Chat. Mtges., sec. 106; Jones, Chat. Mtges., sec. 368; *Shurtleff v. Willard,* 19 Pick. [Mass.], 202; *Hedman v. Anderson,* 6 Neb., 392; *Davis v. Scott,* 22 Id., 154; *Barkow v. Sanger,* 47 Wis., 500; sec. 20, ch. 32, Comp. Stats.) There is no evidence in the record upon which to base a finding of the amount of perishable property in stock at the time of the execution of the

33

mortgage on the 1st day of July, or the amount thereof, if any, disposed of by the mortgagor subsequent to the date last named and before the property was seized by the plaintiff in error two days later to satisfy the order of attachment. Nor is it pretended that such sales, if any, were made with the knowledge or consent of the plaintiff. It is clear, therefore, that the authorities cited are in point, and that the mortgage will not be presumed fraudulent by reason of the character of the property conveyed thereby.

3. The mortgage was however presumptively fraudulent as to creditors for the reason that there was no change of possession of the property mortgaged. But that question was submitted to the jury by instructions which fairly state the law and which are here copied at length:

"In this action the plaintiff has taken by writ of replevin the property described in the petition, claiming to be entitled to its possession as mortgagee under a mortgage executed by Wm. Heinzman, previously the owner of the property. The property in question was in the possession of defendant as a constable by virtue of a writ of attachment executed against the property of William Heinzman.

"The issues made by the pleadings raise the question for your determination as to the validity of the plaintiff's mortgage. You are instructed

"1. That Wm. Heinzman had a 'right to secure plaintiff any valid and subsisting indebtedness owing by him to plaintiff, and for that purpose to execute to her a mortgage on his property if made in good faith without any intention to defraud a creditor. Defendant excepts.

"2. The evidence in this case shows that after the giving of the mortgage to plaintiff no change in the possession of the property took place, and the law is that the mortgage is to be conclusively presumed to be fraudulent, and shall be considered as void unless the plaintiff shows on her part that the mortgage was made in good faith and without any intent to defraud creditors, and the burden of

showing such good faith and absence of fraud is on the plaintiff. Defendant excepts.

"3. Every mortgage made with the intent to hinder, delay, or prevent creditors from the collection of their debts is fraudulent and void as to such creditors, and if the plaintiff either participated in such intent or knew of such intent on the part of Wm. Heinzman at the time of taking the mortgage, or if she had notice of such facts as would put a person of ordinary prudence and care on such inquiry as would have led to knowledge of such fraudulent intent on the part of the mortgagor, the mortgage would be void as to her. Defendant excepts.

"In determining the question of whether plaintiff has shown an absence of such notice or knowledge on her part you are to consider the relations of the parties, the surrounding circumstances, the manner of the transaction, and any other fact shown by the evidence.

"4. Transactions between relatives, whereby property is transferred from one to another, when it is shown that the person parting with the property is in embarrassed circumstances, are to be closely scrutinized and the good faith of such transaction must be clearly established.

"5. If under these instructions you find that the plaintiff has by a preponderance of the testimony shown her good faith as defined herein in the taking of the mortgage your verdict will be for the plaintiff. If plaintiff has failed satisfactorily to show such good faith on her part your verdict will be for the defendant. Defendant excepts."

4. Finally, it is urged that the verdict is not sustained by sufficient evidence of good faith on the part of the plaintiff below to overcome the presumption of fraud arising from the continued possession of the mortgaged property by her son. That the note of $1,250 was executed by the latter for money advanced by the plaintiff is clear from her testimony and is not seriously controverted. It is true as stated in the brief of plaintiff in error that she

rested her case after showing merely the advancement of the consideration named in the note and mortgage.   But from her cross-examination it appears that it was understood when the money was advanced that she should be secured by mortgage and that she had asked for it at different times prior to its execution.   She was also asked:

Q. You wanted to get security?

A. Yes, sir.

Q. That is, you wanted to get your claim before your son's other creditors got theirs?

A. I did not know about his other creditors; I wanted to be secured for the amount of money I gave him.   If it had only been $200 or $300 I would not be so particular.

Q. When you went to the lawyers' office you knew the Omaha Packing Company was suing him.

A. No, sir; I did not.

The foregoing is substantially all the evidence upon the question and is, we think, quite sufficient to sustain the finding of good faith.   It is apparent that the district court did not err in denying the motion for a new trial and that the judgment should be

AFFIRMED.

THE other judges concur.