KILPATRICK-KOCH DRY GOODS COMPANY v. WILLIAM S. MCPHEELY.

FILED OCTOBER 4, 1893.    No. 5113.

1. **Fraudulent Conveyances:** PREFERRED CREDITORS: QUESTIONS OF FACT. A debtor in failing circumstances has a right

to secure or pay in full a portion of his creditors, to the exclusion of the others; and whether in so doing he was actuated with a fraudulent purpose, is a question of fact and not of law.

2. **Attachment**: DEBTS FRAUDULENTLY CONTRACTED: EVIDENCE. Where a plaintiff in attachment claims the debt for which he sues was fraudulently contracted, and, to sustain such claim, offers in evidence a statement made by the debtor to his banker, and by the latter communicated to plaintiff, to render such communication admissible it must be identical with the statement made, or the substance of it, and not the banker's conclusion deduced therefrom.

ERROR from the district court of Dawes county. Tried below before KINKAID, J.

The facts are stated in the opinion.

*Albert W. Crites*, for plaintiff in error:

The evidence shows that defendant had parted with the legal title to the attached property, as well as with the possession of the same. He therefore had no such interest therein as would support a motion to dissolve. (*Chandler v. Nash*, 5 Mich., 409; *Price v. Reed*, 20 Id., 72; *Mitchell v. Skinner*, 17 Kan., 563; *Zook v. Blough*, 42 Mich., 487; *Mendes v. Freiters*, 16 Nev., 388.) Plaintiff was entitled to rely on the representations made by defendant to the First National Bank of Chadron, and communicated to it as to his indebtedness, and such statements, if relied upon and untrue, form the ground of attachment that the debt was fraudulently contracted. A representation a business man makes to a bank relating to his business or pecuniary responsibility is among those expected to be communicated to others for them to act upon. (*Stevens v. Ludlum*, 48 N. W. Rep. [Minn.], 771.) Statements made to a commercial agency are of the same character, although plaintiff had no personal knowledge of what such statements consisted. (*Gries v. Blackman*, 30 Mo. App., 2.) The mortgages must be deemed fraudulent in law as to other creditors, as they cover property in value greatly in

54

excess of the indebtedness represented by the mortgages. (*Bonns v. Carter*, 22 Neb., 517; *Russell v. Lau*, 30 Id., 805; *Brown v. Work*, Id., 800; *Morse v. Steinrod*, 29 Id., 108; *Thompson v. Richardson*, 33 Id., 714; *Smith v. Boyer*, 29 Id., 76.)

*Alfred Bartow, R. St. Clair*, and *J. L. McPheely, contra:*

Where the purchaser intends to pay, and has reasonable expectations of being able to do so, the contract is not fraudulent, although the purchaser knows himself to be insolvent, and does not disclose it to the vendor, who is ignorant of the fact. (*Talcott v. Henderson*, 31 O. St., 162; *Kelsey v. Harrison*, 29 Kan., 143; *Van Dyck v. McQuade*, 86 N. Y., 44; *Nicholas v. Pinner*, 18 Id., 295; *Nicholas v. Michael*, 23 Id., 264; *Hennequin v. Naylor*, 24 Id., 139; *Morris v. Talcott*, 96 Id., 100; *Peru Plow & Wheel Co. v. Benedict*, 24 Neb., 345.)

Ragan, C.

The plaintiff in error attached a stock of goods belonging to the defendant in error. The district court of Dawes county discharged the attachment and the plaintiff in error brings the case here and asks the reversal of this order of the district court. The grounds of attachment alleged in the affidavit are: First, that said defendant has assigned and disposed of his property with intent to defraud his creditors; second, that the defendant fraudulently contracted the debt.

As to the first ground of attachment, the evidence in the record not only does not show, or tend to show, that the defendant in error had disposed of his property, or any of it, with intent to defraud his creditors, or any of them, but the evidence affirmatively shows that the disposition made by the defendant in error of his property was for the purpose of securing his creditors. It appears from the evidence that the defendant in error owned a stock of mer-

chandise in Chadron and on the 20th day of February, 1891, the stock was worth $5,425.41, the book accounts $500, or a total of $5,925.41, exclusive of some store fixtures, the value of which is not shown. On that day the defendant in error executed a chattel mortgage on this stock of merchandise, book accounts, and fixtures, as follows: First mortgage, $2,500; second mortgage, $875; third mortgage, $1,629.39, and delivered possession of the mortgaged property to the mortgagees. The second mortgage was, by its terms, made subject to the first; and the third subject to the first and second. These mortgages, as the evidence shows, were all made and accepted in good faith without intent on the part of any one to defraud, and were made to secure honest debts owing by the defendant in error to the mortgagees.

The contention of the plaintiff in error seems to be that as the value of the property mortgaged was $5,925.41, and the debt secured by the first mortgage was only $2,500, the security was so greatly in excess of the amount of the first mortgage debt as to render the mortgage fraudulent in law, whatever that may mean. But these mortgages were all made and filed on the same day and within a few minutes of each other; in other words, they were one transaction. We are not prepared to say that a mortgage would be fraudulent solely because the value of the property mortgaged was two, or even three, times greater than the debt. Whether it would be, would be a question of fact for a jury or trial court, and not a question of law. A debtor has a right to prefer his creditors; to pay part in full to the exclusion of others; and he has a right to secure the debts of a part of his creditors to the exclusion of the others; and this is true whether he be insolvent or in failing circumstances, or not. All that the law requires of him is that he should act honestly; that his disposition of his property should not be made for the fraudulent purpose of hindering, delaying or defrauding his creditors, and

whether an act of a debtor in the disposition of his prop-
erty was fraudulent, is always a question of fact, and not a
question of law.   Section 20, chapter 32, Compiled Stat-
utes, provides: "The question of fraudulent intent * * *·
shall be deemed a question of fact and not of law."   The
rule of construction invoked here by the plaintiff in error
should not be applied.   The court evidently considered the
giving of the three mortgages as one transaction, and. this
was correct.

We now turn our attention to the second ground of attach-
ment, viz., that the defendant in error fraudulently contracted
the debt.   It appears from the evidence that one Mead, a
traveling salesman of the plaintiff in error, sold the goods
to the defendant in error for which this attachment suit
was brought.   Mead made inquiries of the cashier of a
bank in Chadron as to the financial standing of the defend-
ant in error, and was informed, so he says, that the defend-
ant in error was "all right."   He communicated by letter
this information to the plaintiff in error.   The evidence
also shows that the plaintiff in error, "in selling said goods
and in granting to said defendant such credits, fully believed
in and relied upon the statement in said letter (Mead's) con-
tained, to the effect that 'Mr. Miller, the cashier of the First
National Bank told me (Mead) he (defendant in error) was
all right,' and said statement was the consideration and
basis upon which said goods were sold and delivered and
said credit extended to said defendant."   It seems that the
bank cashier acquired his knowledge of the defendant in
error's financial condition from a statement made by the de-
fendant in error to the president of the First National Bank
on September 24, 1890.   The president of the bank swears
that at this time defendant in error made a statement to him
of his indebtedness, and that some of the debts secured by the
mortgages given were not included in the statement of the
debts mentioned by the defendant in error, though it now
appears that such debts were then in existence.   Defend-

ant in error does not deny making the statement to the bank president, but swears the statement of the indebtedness made by him had reference only to the financial condition of the copartnership of McPheely & Co,—the defendant in error had previously been doing business in the same place with another gentleman under the copartnership name of McPheely & Co.,—and that the bank at that time held a note of that firm.

Counsel for plaintiff in error says : " Plaintiff was entitled to rely on the representation made by the defendant to the First National Bank of Chadron, and communicated to it as to his indebtedness, and such statement, if relied upon and untrue, forms a ground of attachment, viz., that he fraudulently contracted the debt." Counsel cites *Stevens v. Ludlum,* 48 N. W. Rep. (Minn.), 771, as authority for his contention. In that case it is said : " One making representations relating to his business to a commercial agency may be estopped as to its patrons to whom it communicates such representations." This case is not in point here. The bank at Chadron was not a commercial agency, nor does it appear from the record that the plaintiff in error was a patron of the bank. There is no evidence that the representations made by the defendant in error to the president of the bank were intended or expected by the defendant in error to be communicated to the plaintiff in error, or any one else. Besides, the preponderance of the evidence is that the statements made by the defendant in error to the bank president had reference solely to the debts of the old firm of McPheely & Co. Again, it does not appear that the precise statement made by the defendant in error to the bank president, nor the substance of it, was ever communicated to the plaintiff in error. The most that can be said is that the cashier of the bank, knowing what statement had been made, deduced from it the conclusion that the defendant in error was " all right," and communicated this information to the plaint-

iff in error. This is not enough in such cases as this. If the plaintiff in error claims to have relied on a statement made by the defendant in error to the president of the bank, and by him communicated to it, it must show that the identical statement made was communicated to it. It must have had before it the facts; not a conclusion drawn from them by its informant. All that has been said above applies also to a statement alleged to have been made by the defendant in error to J. V. Farwell & Co. It remains to be said of the latter statement, however, that there was no competent evidence before the court concerning it. The alleged copy of the statement attached to the affidavit was not competent evidence. Besides, this copy showed on its face that the statement had reference to the indebtedness of McPheely & Co. It should not have been considered by the court, and probably was not.

There is in the record some evidence which tends to show that the defendant in error fraudulently contracted the debt sued, but the evidence is very weak and contradicted at every point. The trial judge decided rightly that the evidence failed to support the charge that the debt was fraudulently contracted.

The plaintiff in error makes the point that the mortgagees held the legal title to the property and the possession of the same, and, therefore, the defendant in error is not in a position to move to discharge the attachment. It would seem that the legal title to chattels mortgaged remains in the mortgagor until divested by a foreclosure of the mortgage and sale of the property. However, it is not necessary to determine that question now, and we do not decide it. Counsel's point was before this court in *Grimes v. Farrington*, 19 Neb., 45, and there decided adversely to his contention, the court saying: "A mortgagor of personal property, upon which an attachment issued against him has been levied, has the right, under the provisions of section 235 of the Civil Code, to resist the attach-

ment by a motion to discharge the same, upon the ground that the allegations of fraud, upon which the order of attachment was procured, are untrue." There is no error in the judgment of the district court, and the same is in all things

AFFIRMED.

THE other commissioners concur.