WILLIAM B. GRIMES DRY GOODS COMPANY V. JENNIE SHAFFER.

FILED JUNE 6, 1894. No. 5246.

1. **Fraudulent Conveyances:** EVIDENCE: QUESTION FOR JURY. Where the existence of a fraudulent intent in making and receiving a transfer of a debtor's property is to be determined by evidence collateral to the writing, whereby was effected the alleged fraudulent transfer, such question is determinable alone by the jury. Following *Houck v. Heinzman*, 37 Neb., 463.

2. ———: ———: ———: REVIEW. Where a bill of sale of a stock of goods was made by a debtor in failing circumstances to one of his creditors, who took the bill of sale with the agreement that he was to receive the property, make sales from it, and with the proceeds reimburse himself for antecedent indebtedness due him, and for advances made to discharge levies upon the said stock, and after such reimbursements were complete to return to the debtor whatever should remain of such stock, *held*, that a verdict sustaining the contention that such transfer was fraudulent as against existing creditors of the maker of the bill of sale should not be disturbed.

3. **Depositions:** WHEN ADMISSIBLE IN EVIDENCE. Whether or not the deposition of a witness should be received in evidence must be determined from the facts in existence at the time of the trial, and if at that time it is shown that the witness does not reside in, or has removed from, the county wherein the trial is proceeding, his deposition, otherwise unobjectionable, is receivable in evidence.

ERROR from the district court of Harlan county. Tried below before COCHRAN, J.

*Edgar C. Ellis, C. C. Flansburg,* and *William B. Clark,* for plaintiff in error.

*Morning & Keester* and *W. S. Morlan, contra.*

RYAN, C.

On the 14th day of November, 1888, Frank Shaffer, a merchant at Alma, Nebraska, made a bill of sale of his

entire stock to the William B. Grimes Dry Goods Com-
pany, of Kansas City, Missouri, to which company he was
indebted in the sum of about $1,500. After the execu-
tion of this bill of sale, possession was thereunder taken
by the grantor of the stock of goods conveyed. Subse-
quently executions on judgments in favor of Jennie Shaf-
fer against Frank Shaffer, to the aggregate amount of
about $2,000, were levied on the aforesaid stock. These
goods were replevied by the plaintiff in error from the
sheriff, in whose stead Jennie Shaffer was substituted as
defendant. She obtained a verdict establishing her interest
to the amount of the judgments in her favor, upon which
verdict a judgment was duly rendered. Edgar C. Ellis, the
general attorney and general agent of the Grimes Dry
Goods Company's credit department, had, a few days be-
fore the date of the above mentioned bill of sale, reached
Alma in response to a telegram from Mr. Shaffer. Mr.
Ellis was sworn on the trial of this cause, which was had
in the district court of Harlan county. He testified as
follows: " On arriving here I saw Mr. Shaffer at his hotel
and learned from him that his stock of goods had been
seized by the sheriff of this county under executions
amounting to $3,600. I further learned from him that he
had confessed judgment in favor of the plaintiff in this
action for the sum of about $1,500, as I remember. Mr.
Shaffer requested me to make an effort to save his goods
from sale under execution. After being here a couple of
days and looking the field over, I finally entered into an
agreement and this bill of sale. I bought the stock of
goods, paid off the executions for $3,600, and costs, and I
receipted his claim to us. There was something over $200
worth of goods at the depot then not levied on. The total
amount of executions levied on the property, and the judg-
ment he had confessed in the county court, and the mer-
chandise at the depot, amounted only to $5,286."

On his cross-examination Mr. Ellis testified that the
12

goods were shipped from Alma to Kansas City, and from thence sold to some party in Kansas; that after taking possession he retained it about twenty-four hours, and then turned the goods over into the possession of W. H. Cook, and that he (Mr. Ellis) hired Mr. Turner to assist Mr. Cook, after consulting with Mr. Shaffer as to the advisability of so doing. As to the conversation between himself and Mr. Shaffer relative to the execution of the bill of sale, Mr. Ellis, on cross-examination, testified as follows: "We had different conversations, extending through two days, about this matter. Mr. Shaffer expressed himself as very anxious that I should take the property. He told me that unquestionably at sheriff's sale the property would not pay off the executions; that the goods would not bring more than one-third or one-half of what they were worth under the sheriff's hammer. He said that he was very desirous that the company should have their pay; that since this trouble a year before our company had treated him very nicely, and he confessed judgment that we might be safe, and the only way to prevent the sale. I told him there was not enough in it to justify paying off the executions. I made a thorough investigation and finally told him I would take the property, and would draw on the company for the $3,600 to pay off the execution, if he would give a bill of sale. This he expressed himself very glad to do. He expressed himself to me as very confident that in a short time he would be able to get out of his embarrassment. He told me of a section of land to the south of here somewhere that was heavily mortgaged, but he thought he could dispose of his equity in it and get rid of his indebtedness and resume business. He also said during his conversation that there were more goods in the store than I thought there were. I told him when I took the bill of sale that if he did sell his land and got the money, I would be perfectly willing at any time to step out with my money." In answer to the question whether or not Mr. Shaffer told him

that he owed others, Mr. Ellis said he thought Mr. Shaffer so told him.    Mr. Ellis in his evidence denied that there was any arrangement or agreement with Mr. Shaffer other than as shown by the writings introduced in, evidence. The bill of sale, which Mr. Ellis identified and which was introduced in evidence, was of date November 14, 1888, signed by Frank Shaffer, and was made to the William B. Grimes Dry Goods Company for the consideration recited, of the sum of $5,286.   By its terms it was an absolute conveyance of the stock of goods owned by Shaffer, and which was described with considerable minuteness.   There was also introduced in evidence a writing in the following terms:

"ALMA, NEBRASKA, November 15, 1888.

" Having this day purchased of Frank Shaffer, of Alma, Nebraska, his stock of goods, paying him therefor $5,286, as follows: $3,560.48, by paying executions levied on said stock of merchandise by the Michigan Manufacturing Company and others; $1,423.14, by payment of judgments against him held by us; $249.39, by goods sold and delivered; balance, by payment of costs and expenses in taking said judgments and making this arrangement, which said Shaffer consents and agrees to pay:

"Now we agree if, at any time before the complete sale or transfer of said goods by us, said Frank Shaffer shall wish to purchase so much of same as shall be still owned by us, the price shall be determined as follows: We are to receive the said sum of $5,286, with interest thereon at the rate of ten per cent per annum, together with the expenses we shall have incurred in taking, holding, and selling so much thereof as we shall have at the time of said repurchase sold, including rent, insurance, fuel, lights, clerk-hire, traveling expenses, and all other similar reasonable expenses, and the proceeds from the portion of said merchandise which shall then have been sold by us shall count and apply as part of said repurchase money; pro-

vided, that this agreement is not to be construed as affecting the transfer this day made to us by said bill of sale in any [manner] way. We are to be free and unrestrained to handle the property as our own in such manner as will be in our judgment surest to realize to us a return of our investment, our title being absolute, carrying with it all rights as to the control of the property incident thereto.

"W. B. GRIMES DRY GOODS COMPANY,

"By EDGAR C. ELLIS,

"*Their Att'y.*"

In contradiction of the evidence of Mr. Ellis, Frank Shaffer testified as follows: "I think it was between the 12th and 14th of November, 1888, my stock was attached by the sheriff and the store shut up. I thought my stock would pay out if handled properly, but I did not know what to do, and Mr. Ellis came here—and in regard to telegraphing to him, I cannot say about that, but Mr. Beall came to me and asked me if I owed the William B. Grimes Dry Goods Company anything. I said, 'I did.' He said, 'will you confess judgment in favor of the company.' I said, 'yes,' and I did so, and shortly after that Mr. Ellis came up here and asked me what I was going to do. I said, 'I did not know what was best.' He wanted to know how many goods were in there, and I told him as nearly as I could. He was here two or three days, and finally I agreed he should have a bill of sale, provided he put up this money for the judgments against the stock, and I was to go in the store and look after matters and turn the money over to them and he was to give the goods back to me after their claim was paid, and also that my commission should be cut in two. Then he drew up this bill of sale, and also a letter that I did not stop to read much, but put it in my pocket, and we went over to the Valley Bank and the check was paid to the sheriff there and the sheriff turned over the keys to the store. I started to go back into the store and Mr. Ellis said I had better

.fight shy for a day or two so as not to excite suspicion, and then he turned a cold shoulder on me. Mr. Ellis asked me about Mr. Turner. I told him he was as good a man as he could get. I went with Mr. Ellis and hired Mr. Turner; and the building in which the stock of goods were was owned by the Valley Bank, and I got them to cut the rent down ten dollars on the 'month, and Mr. Turner said he would work for forty dollars instead of fifty dollars, if it would help me any. The stock was to be turned back to me; that is, the balance after realizing what was coming to them." On his cross-examination Mr. Shaffer testified that in giving the bill of sale he had no intention, nor was there any talk, of defrauding Jennie Shaffer, who was his wife, nor any other of his creditors. On re-cross-examination Mr. Shaffer said that Mr. Ellis said that the reason he did not put into the agreement any writing of the provisions testified to was because other parties might get hold of it and attach the goods and they might be sold at sheriff's sale after all, but that Mr. Ellis said he would do as he had agreed.

S. B. Turner testified that he had in the year 1888 been employed in the store of Frank Shaffer at Alma, and that when Shaffer's stock was turned over to the W. B. Grimes Dry Goods Company it was worth $8,500. He further testified that Mr. Ellis told him when they got their account of about $5,200 out of the stock they were to return it to, Mr. Shaffer; that this was said by Mr. Ellis when witness and others were in and going to work selling goods for the W. B. Grimes Dry Goods Company, and that Mr. Ellis told witness to cut about half the profit which had theretofore been realized; that the exact words of Mr. Ellis were to "cut the profit in two." This witness further said that when he was employed by Mr. Ellis the latter gentleman said it was to Mr. Shaffer's interest to have the expenses as low as possible.

The testimony of this last witness was given by a depo-

sition, which plaintiff in error attempted to exclude for two reasons: The first was, that the deposition was not filed until within a day before the trial began. As we understand the contention of counsel, it is, that though the deposition was received in the office of the clerk of the district court some time before the trial began, it was not in fact opened, but the filing mark of the clerk, upon the receipt of the package, was placed upon the unopened envelope containing the deposition, and that for this reason the deposition was not filed until the envelope was opened and the filing indorsed on the deposition itself. If counsel for plaintiff in error desired an inspection of this deposition he could have secured it at any time, without doubt, by asking the clerk to open the envelope. He is not shown to have done this, and this objection is without weight. The other ground of contention is, that the deposition was taken in Harlan county, which was not permissible, for it is insisted that Turner should have been subpœnaed instead of taking his deposition. In the testimony of Frank Shaffer it was made to appear that Mr. Turner, when his place of residence was last known, was a resident of Denver, and was absent from Harlan county. Section 372 of the Code of Civil Procedure gives the right to use the deposition of a party as evidence when he does not reside in the county wherein is pending the action or proceeding, etc. Clearly the status of the witness referred to in the statute is of the time when the trial is had. This objection to the deposition was, therefore, properly overruled.

There was presented by all the evidence introduced a material question of fact, which was whether or not the plaintiff in error obtained possession and control of the stock of goods of Frank Shaffer under and by virtue of a collateral arrangement whereby a secret trust was created in favor of Mr. Shaffer. Upon consideration of the evidence the jury found adversely to the plaintiff in error.

This settled the fact proposition involved. (*Houck v. Heinzman*, 37 Neb., 463.)   The trial court adopted the views of the supreme court of North Dakota as enunciated in *Newell v. Wagness*, 44 N. W. Rep. [N. Dak.], 1014, and accordingly instructed the jury.   The plaintiff in error concedes that the principles recognized in the case of *Newell v. Wagness, supra*, are excellent law, but contends that they are not applicable to the evidence in this case.

The first criticism, as we gather it, is, that there was no proof of the insolvency and inability of Mr. Shaffer to pay his debts, and that there was no evidence that the transfer could have a tendency to defraud other creditors who were trying to collect the debts due them from Shaffer.   The evidence on this point was not so direct and circumstantial as to clearly demonstrate the existence of these mooted facts, and yet there was sufficient to justify the jury in believing they existed.   There was in existence when this transfer was made some $1,500 of the claim of the defendant in error.   Mr. Ellis testified that when he and Mr. Shaffer went up to see Mr. Flansburg, who, as an attorney, had some claims against Shaffer, and showed him the bill of sale and the written contract contemporaneously made, and satisfied Mr. Flansburg that this contained the entire agreement between the witness and Shaffer, that Mr. Flansburg relinquished the executions on the goods which he had previously caused to be issued against Shaffer. This was some time after the bill of sale and its accompanying memoranda had been made, and yet this release was so nearly contemporaneous with the making of said writings and was so directly influenced by them as to justify the assumption of the existence of such evidence as to render applicable the instructions given.

Again, complaint is made that the court assumed the possibility of the existence of evidence sufficient to justify consideration by the jury of the question whether or not a secret trust was created or existed between the defendant in

error and Mr. Shaffer. The testimony, hereinbefore set out quite at length, will have served no useful purpose whatever if it has not shown that there were sufficient grounds on which to base the conclusion that a secret trust was created in favor of Frank Shaffer by the transaction between him and Mr. Ellis, provided the jury believed the testimony of Mr. Shaffer and Mr. Turner in preference to that of Mr. Ellis. With the comparative weight of the evidence of these three witnesses we have no concern,—that was an inquiry alone determinable by the jury. The observations which we have made in respect of the instructions given comprehend and meet the contentions with respect to the refusal of one or more instructions asked. No error is found in the record and the judgment of the district court is

AFFIRMED.