KILPATRICK-KOCH DRY GOODS COMPANY V. HENRY J. BREMERS ET AL.

FILED APRIL 16, 1895.    No. 6128.

1. Estoppel: ATTACHMENT: PLEADING.    An attachment having been issued against a defendant, the plaintiff claiming to have acquired a lien by virtue of a garnishment founded upon aver-
· ments that the garnishee had property of the defendant in his possession, cannot be heard to insist that the defendant is without standing to move a discharge of the attachment because in fact he had no interest in the property.

2. Chattel Mortgages: CONSTRUCTION: VOLUNTARY ASSIGN-
MENTS.    Instruments in the form of chattel mortgages will not be held to constitute an attempted assignment for the benefit of

creditors because of the contemplated reciprocal trusts imposed on each mortgagee in favor of the others; because the mortgages provide that they shall prorate one with another; because at the time the mortgages were made the mortgagor was unable to redeem, conveyed all his property by the mortgages to secure debts greater than the value of the property; and because the parties contemplated that the mortgagees should take immediate possession,—nor does the fact that the mortgages contained a power of sale in accordance with the statutory provisions for foreclosure render the transaction an assignment.

3. Voluntary Assignments: CHATTEL MORTGAGES.  The act in regard to voluntary assignments refers only to assignments intended as such; that is, when a debtor undertakes to make an assignment under the statute he must make it in accordance with it, otherwise it is no assignment and is void.  But the rules relating to the construction of mortgages and other instruments somewhat akin to assignments, but not intended as such, remain unchanged.

ERROR from the district court of Dodge county.  Tried below before MARSHALL, J.

*Frick & Dolezal* and *W. W. Morsman*, for plaintiff in error.

*Loomis & Abbott* and *Munger & Courtright, contra.*

See opinion for citations.

IRVINE, C.

The plaintiff in error brought this action against Henry J. Bremers to recover $2,742.86 for goods sold and delivered.   An attachment was issued on an affidavit assigning several grounds, the only one which any attempt was made to support being that the defendant had assigned and disposed of his property with intent to defraud his creditors.   No property was seized under the writ, but process of garnishment was served on the First National Bank of Fremont, J. H. Meyer, and upon persons alleged to be agents of Joel J. Bailey & Co., and Kirkendall, Jones &

Co. The First National Bank and Meyer answered as garnishees. The defendant Bremers moved to discharge the attachment, the plaintiff moved for an order requiring the garnishees to pay the amount of plaintiff's claim into court. The district court overruled the latter motion and discharged the attachment. Judgment was entered in favor of plaintiff against Bremers, and the plaintiff instituted proceedings in error against Bremers, the First National Bank, and Meyer, seeking to reverse the two orders referred to.

The evidence showed that Bremers, who was engaged in trade at Fremont, was on the 21st of January, 1893, indebted as follows: To J. H. Meyer, $3,425; to the First National Bank, $1,497.62; to Kirkendall, Jones & Co., $333.03; to Joel J. Bailey & Co., $1,174.27; to Kilpatrick-Koch Dry Goods Company, $2,742.86. The indebtedness to the first two was for borrowed money; to the last three for goods sold and delivered. He was possessed of a stock of goods which was valued by persons who took an inventory thereafter at $8,000. Bremers testifies that it was worth not more than $6,500. Meyer was pressing him for payment or security. He agreed to give this security, but desired to protect other creditors at the same time, giving a preference to those whose demands arose from the loan of money. Accordingly, five chattel mortgages were executed by Bremers, one to each of the creditors. The mortgage to Meyer was made to secure a note dated January 21, 1893, and due one day after date; that to the bank secured three notes, two of which were already held by the bank and were not yet due; and the third was given for an overdraft and was payable one day after date. Each of these mortgages contained a provision that it was to prorate with the others. The three mortgages to wholesale dealers were each made to secure notes dated one day after date. Each provided that it should be subject to the mortgages to Meyer and to the bank, but that the three

junior mortgages should prorate with one another. These mortgages were in the usual form and contained a power to sell at public auction after twenty days' notice. The mortgages were all upon Bremers' stock of goods, together with the furniture and fixtures, but that to Meyer excepted from the goods mortgaged "boots, shoes, slippers, and rubber goods." The three junior mortgages were made without the solicitation or knowledge of the mortgagees. Bailey & Co. and Kirkendall, Jones & Co. seem to have accepted their mortgages, but the plaintiff refused to accept its, and began this action. Before the motion was filed to discharge the attachment the goods were sold in bulk by the two senior mortgagees, realizing $5,277.50. This was sufficient to satisfy the two senior mortgages and the cost of keeping and selling the property and left a small balance which an attorney retained for the benefit of the junior mortgagees. Possession had been taken by the senior mortgagees the evening the mortgages were executed and was retained by them until the sale.

The plaintiff in error contends that Bremers had no standing in court to move for the discharge of the attachment and that the judgment should be for that reason reversed. This contention is based upon the fact that the goods had been sold before the motion was filed and had not realized sufficient to pay the mortgages; that, therefore, no interest was left in Bremers, residuary, contingent, or otherwise. It must be remembered, however, that the plaintiff did not attach these goods. It suffered them to remain in the possession of the mortgagees and contented itself with garnishing the latter. This garnishment was founded upon the allegation that the mortgagees had property of Bremers in their possession. If, therefore, no interest remained in Bremers, then the plaintiff gained nothing by this garnishment. In other words, the plaintiff, relying upon its garnishment to reach the proceeds of the sale of the goods, cannot be heard to urge, contrary

to the jurisdictional facts necessary to support the garnishment, that Bremers was without interest therein. A similar point was passed upon in *Grimes v. Farrington*, 19 Neb., 44, where it was said: "It is next contended that defendants in error have no standing in court which will permit them to question the attachments. That according to their own theory they were not in possession of the goods at the time of the levy and are not entitled to the possession of them. This might perhaps be sufficiently answered by saying that since plaintiffs in error have levied upon the property as the property of defendants in error and insist that it does belong to them, they might not be heard now to say that plaintiffs in error have no such interest in it as would permit them to defend against the attachment." Interesting questions are suggested by the contention referred to as to the right of the plaintiff to attack the validity of the mortgages by virtue of its garnishment, and as to the position the plaintiff would be placed in should it be held that Bremers had no standing to move a discharge of the attachment. These questions are not, however, argued, and we mention them merely in order to affirmatively disclaim the intention of inferentially ruling thereon. On the merits of the motion to dissolve the attachment there is no contention that Bremers, in making the mortgages, was moved by any actual fraudulent intent. There is not the slightest evidence to that effect; but plaintiff bases its contention solely upon the ground that the conveyances, while in the form of mortgages, amounted in fact and in law to an irregular assignment for the benefit of creditors, which not complying with the requirements of the statute, was void. The writer is aware that it is a commonly accepted doctrine that if a debtor makes a conveyance which the law declares void generally or as against creditors, an intent to defraud is presumed and that an attachment will lie. Speaking for himself the writer conceives that a distinction exists between attacking such a conveyance for the purpose

of avoiding it as against the grantee and merely using the fact of the conveyance in evidence in support of an attachment directed against the grantor.  To support such an attachment on the ground of a conveyance of property the statute.requires that the conveyance must be made with the intent to defraud creditors. (Code Civil Procedure, sec. 198.) And it has been several times said that whether the grantor was actuated by such a fraudulent intent is a question of fact. (*Kilpatrick-Koch Dry Goods Co. v. McPheely*, 37 Neb., 800; *Hewitt v. Commercial Banking Co.* 40 Neb., 820; *Meyer v. Union Bag & Paper Co.*, 41 Neb., 67.)  This is certainly true, unless the fraud is disclosed by an inspection of the instrument of conveyance itself. (*Houck v. Heinzman*, 37 Neb., 463.) But it may be remarked that the case last cited was a proceeding in which the validity of the mortgage as between a creditor and a mortgagor was involved, and the issue was not as to the intent of the debtor alone.  The foregoing statement is made merely as an expression of the writer's views and for the purpose of preventing an inference to the contrary to be drawn; but the case was not presented upon that ground and the decision will be based on the questions argued.

The real question presented, to-wit, the test to distinguish between mortgages given by way of security and an attempted assignment for the benefit of creditors, is one which has been much discussed in former decisions.  The many authorities, which, as counsel for plaintiff say, "are very numerous, very conflicting, and hardly one in ten has been decided upon principle," have been several times reviewed. We shall not here undertake to again review them, nor shall we, except in so far as the special argument advanced in this case requires, renew the discussion of the broad question.  Suffice it to say that an uncertainty in the decisions, occasioned by the apparent conflict of *Grimes v. Farrington*, 19 Neb., 44, and the case of *Bonns v. Carter*, 20 Neb., 566, has, we think, been removed by the uniformity

of later decisions, beginning with *Hershiser v. Higman*, 31 Neb., 531. These are all contrary to the logic of the majority opinion in *Bonns v. Carter*. Indeed, *Hamilton v. Isaacs*, 34 Neb., 709, expressly disproves of *Bonns v. Carter*, and *Jones v. Loree*, 37 Neb., 816, and *Smith v. Phelan*, 40 Neb., 765, explicitly announce that *Bonns v. Carter* is overruled. Counsel for the plaintiff, in a fair and very able brief, filed before the decision in *Jones v. Loree*, while basing their argument to some extent on the doctrine announced by the majority in *Bonns v. Carter*, recognize *Hamilton v. Isaacs* as the definitive expression of the court's views, and concede that unless this case is distinguishable from that their position cannot be maintained. In *Hamilton v. Isaacs*, one Denning was in failing circumstances and made separate mortgages upon his stock of merchandise to six creditors. The mortgages were made and delivered at the same time, and they contained a provision that they should prorate with one another. The case was distinguished from *Bonns v. Carter*, upon the ground that the conveyance was not to a trustee for creditors. It was held that the transaction was not void as a prohibited assignment; that the contemplated trust reposed in each mortgagee in favor of the others did not constitute it an assignment, nor did the fact that the mortgagor was insolvent, nor the fact that there was an agreement that the mortgages should prorate. The plaintiff undertakes to distinguish that case from the present upon the grounds, first, that there was not in *Hamilton v. Isaacs* a transfer to one creditor of goods upon which another creditor had no lien, with a provision that the latter should share in the proceeds of such goods; and secondly, that it was assumed in *Hamilton v. Isaacs* that the instruments were made to secure an indebtedness, while in this case it was evidently not the purpose to give security, but that it was the purpose to make an absolute disposition of the property for the benefit of creditors. The plaintiff's first argument is, we think,

based upon a misconstruction of the two senior mortgages.
The argument is that the "boots, shoes, slippers, and rub-
ber goods" not included in Meyer's mortgage were by the
prorating clause in the bank's mortgage devoted to the
payment of Meyer's debt as well as the bank's. We think
a proper construction of the mortgages is that Meyer ob-
tained no lien on these excepted goods, and that the stipu-
lation that the two mortgages should prorate applied only
to such goods as were included in both mortgages. On the
second question the argument is based largely on the lan-
guage used by Judge Post in the statement of the case of
*Hamilton v. Isaacs*, to-wit: "Said mortgages were all given
to secure the *bona fide* debts of the mortgagor." But this
language was not used in stating a conclusion reached from
a consideration of the question as to whether the mortgages
were given by way of security or by way of absolute dis-
position. The court merely made use of the customary
phrase by which such transactions are described, and no
stress can be laid upon the use of the word "secured."
The argument of the plaintiff is, in short, that in mak-
ing the mortgages in the manner in which they were made,
relative or reciprocal trusts were created against each mort-
gagee in favor of the others; that the mortgagor was insolv-
ent; that the parties did not contemplate that he would
redeem the mortgages; that the goods were not worth
enough to pay them all; that the mortgagor had not the
ability to redeem; that he placed in the mortgages a power
of sale with the intention that it should be immediately
exercised; that from these facts it was evident that he
contemplated an absolute disposition of his property in
order that it should be sold and a fund created to pay
debts without reserving any interest in himself. Do these
facts create any distinction in principle between this case
and the cases of *Hershiser v. Higman, Hamilton v. Isaacs*,
and *Jones v. Loree?* We think not. The fact that the
mortgagor was insolvent is not important. An insolv-

ent debtor has the right to prefer one or more of his creditors to the extent, if necessary, of devoting all his property to that purpose. (*Hershiser v. Higman, supra; Hamilton v. Isaacs, supra; Costello v. Chamberlain,* 36 Neb., 45; *Kilpatrick-Koch Dry Goods Co. v. McPheely, supra.*) So far as the plaintiff's argument is based upon the doctrine that relative trusts were created against each mortgagee on behalf of the others the case is precisely similar to that of *Hamilton v. Isaacs.* So far as the argument is based upon the ground that the defeasance was not inserted in good faith and that the debtor intended the transaction to be an absolute disposition of his property, this must be inferred, if at all, from the facts that the mortgaged property was probably insufficient to pay the debts secured; that the parties contemplated that the mortgagees should immediately take possession and proceed to realize on the security, and from the fact that the mortgagor gave an express power of sale. If we should hold that the taking or giving of inadequate security constituted the transaction fraudulent we would practically hold that a debtor could never safely secure his creditor. The argument has always been the other way, and it has often been said that the giving and taking of security in value greatly in excess of the debt is evidence tending to prove fraud. It would not do to say that because a debtor cannot give adequate security he must refrain from giving any or leave the transaction open to attack as constituting a fraud in law. So, too, of the fact that the parties contemplated that the creditors should immediately take possession and that thereafter the debtor should not continue in business. Our statute makes a chattel mortgage presumptively fraudulent unless the mortgagee does immediately take and continuously retain possession of the mortgaged property. If it is a badge of fraud not to take immediate possession, it cannot be a badge of fraud to do so. As to the power of sale, it was for a sale in the manner provided

by statute for the foreclosure of chattel mortgages. (Compiled Statutes, ch. 12.) If no such provision had been contained in the mortgage, the statute referred to would have supplied it, and we cannot hold that the instruments were not mortgages because they provided for foreclosure in the very manner which the statute requires for the foreclosure of mortgages. We repeat that we can see no distinction in principle between this case and *Hamilton v. Isaacs* and the recent decisions of this court. The rule announced in these later cases is now well settled and must be adhered to. In order that the position of the court may not be misunderstood we take this occasion to say that the result of the later cases is an approval of the views of Judge Reese in the dissenting opinion in *Bonns v. Carter*, 22 Neb., 495, in which this language was used: "I am inclined to think that the statute refers only to assignments when intended as such; that is, when a debtor undertakes to make an assignment under the statute, he must make it in accordance with it, otherwise it is no assignment, and is void; and the rules relating to the construction of mortgages and other instruments somewhat akin to assignments, but not intended as such, remain unchanged; and, therefore, this mortgage is not an assignment, in the sense referred to in the first and twenty-ninth sections of the assignment law, and is not, for that reason, void." It follows that the district court properly discharged the attachment and, therefore, did not err in discharging the garnishees at the same time.

JUDGMENT AFFIRMED.